# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
## Civil Division

JANINE A. ALEXANDER,
PLAINTIFF, Pro se

FILED BY ___ D.C.

APR 05 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

v.

CITY OF STUART,
Stuart Police Department,
and the following officers jointly as
employees of the City of Stuart and
individually as: Officer Nyugen Vo
Officers Chris Heitfeld, Sergeant(s) Matthew Cernuto,
Derek Ortado and Gerwan, Charles Buchanan, and
former Chief of Police David Dyess
City Attorney Michael Mortell,
Ms. Roz Johnson, Human Resources
Dennis A. Gallas individually
Martin County Sheriff William D. Snyder, and
Martin County Corrections/Jail Deputy(s)
Katrina Christie, Stephanie Westbrook(Gaskins),
Kaylie Lymon, Sergeant Dee Randolph, Officer Ewell
Assistant State Attorney(s) Kaitlyn Bingham and Nita Denton
Theodore Roodhof and Assistant State Attorney Bruce Colton
of the 19th Judicial Circuit
Florida Dept of Corrections, Supervisor Joseph Cracchiola,
Officers Robin Hill and Frank Ceja.

Case No.: _____
related to 2:19-CV-14084
Honorable Judge Rosenburg,
and Magistrate Maynard

Claims brought in accordance
Civil Rights 42 U.S.C. 1983
Cause(s) of Action
VIOLATIONS OF
1ST AMENDMENT
4TH AMENDMENT
5TH AMENDMENT,
6TH AMENDMENT
8TH AMENDMENT
14TH AMENDMENT
Retaliation, and
Conspiracy

## COMPLAINT

**COMES NOW BEFORE THIS COURT,** Plaintiff Janine A. Alexander, pro se

submitting this Second Amended Complaint in an effort to cure insufficiencies as

identified in the Defendant City of Stuart's Motion to Dismiss and request this court

REOPEN the above styled case for the purpose of allowing her to file Responsive

Pleadings that were prevented due to no fault of her own, as she was Incarcerated at

Martin County Jail, the time that a response was sought by the court and could not meet

the deadline. The Plaintiff was detained from August 23-December 6, 2019, at Martin

County Jail, under the pretext of VOP; probation was set to terminate on May 21, 2019.

1

## 1) PRELIMINARY STATEMENT:

**Statute Of Limitations, Relation back, AND Excessive Force**

In Defendant City of Stuart's Motion to Dismiss (DE 15) August 13, 2019,

"CONCLUSION", paragraph 27, "At minimum, Plaintiff should be required to re-plead

her allegations so as to correct the deficiencies provided", and gives rise to Plaintiff's

Motion to Reopen, but Plaintiff has since been ordered to file a new Complaint.

In Defendant's Sheriff of Martin County, Motion to Dismiss (DE16) August 14, 2019,

states "claims were barred", but states further on Page 3, "Section 1983 cases, the statute

of limitations does not begin to run until the facts which would support a cause of action

are apparent or should be apparent to a person with a reasonably prudent regards for his

rights". *Calhoun v. Alabama*, 705 F. 2d. 422.  Section 1983 actions do not accrue until

the ***plaintiff knows or has reason to know that he/she has been injured***, but once

accrued , the state limitation period applies, which in the instant case is Florida's 4-year

limit. Calhoun (11th Circuit 1983), Rubin, 621 F.2d a 116).

Further, on page 6 (DE16), Sheriff's Office Defendants agree with the Stuart Defendants

that at minimum, "the Plaintiff should be ordered to file a Second Amended Complaint

which complies with the Federal Rules of Procedure",  without reference to what doesn't

comply and what Rule of Procedure she is not complying with.

Plaintiff was arrested multiple times by Stuart Police which resulted in injury, being

March 11, 2015, March 28, 2015, April 13, 2015, and then on July 25, 2019, while at

City Hall requesting discipline records, she was barricaded, intimidated and threatened

with arrest by Stuart Police. Each subsequent encounter with the Stuart Police further

exacerbates her Mental health condition diagnosed as PTSD.  In email correspondence,

Feb. and March 2021,Stuart City Attorney, Michael Mortell, accused the Plaintiff of suffering from "Persecutorial Delusional Disorder" when she accounted for the events of July 25, 2019, and he claimed no officers were there.  Mortell further threatened to have Plaintiff "sanctioned" if she continued to name him as a Defendant in the instant matter. (Emails available upon request)

Plaintiff was incarcerated on August 3, 2019 - December 6, 2019 and could not respond to any Defendant's Motions to Dismiss, as she was not apprised of such and service was improper.  All Defendant's knew or should have known of Alexander's status as incarcerated in Martin County Jail,   as she submitted Settlement Letters from Martin County Jail in Fall of 2019. (Letters available on request)

Plaintiff named the Sheriff's office Defendants on June 3, 2019, but was shortly thereafter detained and prohibited from proceeding as she was Pro se and held in confinement long enough for her claims to be Dismissed by this court, leaving her at a grave disadvantage to recover this legal process.  Defendant's claims against the Sheriff that solitary confinement violated her 1st, 5th, 6th, 8th and 14th Amendment rights were not identified until she was provided the Model Jail Standards by FDLE.   During her detainment Fall of 2019, Alexander was threatened  to be put back into solitary by some of the same deputies which mistreated her in May- June 2015, and therefore imputes "Relate back" in accordance with Rule 15(c)(1).   These periods of Solitary confinement impeded Alexander's ability to file or respond in this instant matter.  The more recent events in 2019, mark the accrual for the addition of claims under Section 1983 for Retaliation and Intimidation.  All claims "relate back" to the filing of the original complaint, as "but for", the initial event there would not have been "cause for arrest".

Rule 15(c)(1)(b) provides for relation back if a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading, and FRCP15(c)(1)(b)(ii), the party brought in by amendment, knew or should have known that the action would have been brought against it, but for a <u>mistake</u> concerning the <u>proper party's identity</u>. *Lelieve v. Orosa,* WL 5103949 at *4 (SD Fla. 2011)

In regards to the State Attorney and Department of Corrections, additional accusations of VOP (May 2019) relate back to Plaintiff's initial Probation May 22, 2015 and termination set for May 21, 2019, and Plaintiff was cited for another VOP on May 8, 2019.

## (2) EXCESSIVE FORCE

Excessive force claims are not "governed by a single generic standard; instead, because Section 1983 is "a method for vindicating federal rights" conferred by other federal laws, excessive force claims can be brought under the Fourth, Eighth, or Fourteenth Amendment. *Graham*, 490 U.S. at 393–94. However, Section 1983 excessive force claims can only be brought under the Fourteenth Amendment's "more generalized" due process clause if they are not "covered by" the "explicit textual source[s] of constitutional protection" found in the Fourth or Eighth Amendments. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 842–43 (1998) For example, the Supreme Court has applied substantive due process analysis to excessive force claims brought **prior** to an arrest, such as in high-speed police chases, and to claims brought by **pretrial detainees**, who have yet to be convicted of any crime. *Lewis*, 523 U.S. 833 (high-speed police chase); *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (claim brought by pretrial detainee). In *Lewis*, the Court reiterated that "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so

egregious, **so outrageous**, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847, n.8.

Alexander was initially arrested on March 11, 2015, when Officers Vo, Heitfelt, Osinga, and Sgt. Cernuto, used "SWAT-team" tactics, late at night in a 55-plus community after she had been to the police station earlier that day to report that Vo had, "not done his job'. The officers conduct was Malicious and "Outrageous" .

Again, on April 13, 2015, Officers Vo and Gerwan used excessive force in apprehending Alexander in the same community under pretext of a 9-1-1 misuse, a misdemeanor constituting a warning citation.  These types of arrests cause public humiliation, demonstrated Depraved Indifference and subjected Alexander to Intentional Infliction of Emotional Distress. Vo and Gerwan's conduct was Malicious and Outrageous, as they were reminded of the lack of investigation by Vo on February 27, 2015.

**3) CAUSE(s) of ACTION:**  (Plaintiff is using the Form provided by the court Pro Se 15 Complaint for Civil Rights (non-prisoner), to structure this Complaint.

This cause was brought before this court in Accordance with 42 U.S.C. § 1983 whereby 1) a deprivation of rights, privileges or immunities secured by the Constitution and Federal Law, and 2) whereby a government agency or employee of that agency "under the color of the law" breached the constitutional rights of a person, albeit the Plaintiff, Janine A. Alexander, pro se.   Plaintiff states herein as a Cause(s) of Action: Deprivation of rights, privileges, and immunities secured by the Constitution and Federal Law, and other Statutory Rights a Provided under State Law, as it relates to 1st Amendment (Freedom of Speech), 4th Amendment (Unreasonable searches and seizures), 5th Amendment, (Due Process as Miranda rights and coercive interrogations),

6th Amendment (the right to a lawyer, and unnecessary delays, know accusers and evidence against Defendant). 8th Amendment (Cruel and unusual punishment), and 14th Amendment, (Due Process., as Equal Protection of the Law).

Together, Rules 15 and 21 provides movant(s) with an extremely liberal standard to meet. Courts should generally grant motions to amend absent any evidence of bad faith, undue delay, or undue prejudice to the non-movant. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

In March of 2019, Plaintiff filed Complaint in Case No. 2:19-CV-14084, and had served process when she was Incarcerated on August 3, 2019. Plainitiff filed a Motion to Reopen and was instructed to filed a new Complaint. Events have occurred subsequent to the initial complaint, Case No. 2:19-CV-14084, which impute the doctrine of **"Relate back"** as follows:  as it relates back and brings the initial complaint forward.

( pg. 2  and 3  of the COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (non-prisoner Complaint)  ATTACHED)
### I. PARTIES

4) The Plaintiff, Janine A. Alexander, herein after, (Alexander) lived at 2600 SE. Ocean, Stuart, FL 34996 in Vista Pines community, in Stuart, FL, of Martin County, FL at the time of the initial occurrences, February of 2015, and resided in Martin County until August of 2016.  She then relocated to Nashville, TN from Fall of 2016 - August 2019.  She now resides in FL.

5) The Defendant(s), of City of Stuart, Stuart Police Department, Martin County Sheriff's Department, and the State Attorney's office, and FL Department of Corrections, were employed by an agency of the government, at the time of initial occurrences spanning from February 27, 2015 - April 6, 2018.

Events occurring after filing of initial complaint in Case No. 2:19-CV-14084:

Subsequent to the initial complaint: City of Stuart, Stuart Police July 25, 2019.

Subsequent to initial complaint:  FL Department of Corrections, May 6-8, 2019.

Subsequent to initial complaint: ASA Theodore Roodhof: on/about June 6, 2019.

Subsequent to initial complaint: Martin County Sheriff Deputy's August 23, 2019.

The FL Department of Corrections  is now added as a Defendant due to events occurring in June 2015 - May 2019 through December of 2019 and as these events "relate back" to the initial event causing Plaintiff to be charged and submitting to probation.

6)   Dennis Gallas is identified as the individual who provided State's evidence as a "video" as 55 secs. in Case No. 2015-000409CR, Martin County, FL.

7)   Defendant(s)          Official Position(s)          Place of Employment

| Defendant(s) | Official Position(s) | Place of Employment |
|---|---|---|
| 1) Nyugen VO | Officer of the Law | City of Stuart, FL |
| 2) Chris Heitfeld | Officer of the Law | City of Stuart, FL |
| 3) Matthew Cernuto | Officer of the Law | City of Stuart, FL |
| 4) Michael Gerwan | Officer of the Law | City of Stuart, FL |
| 5) Derek Ortado | Officer of the Law | City of Stuart, FL |
| 6) Charles Buchanan | Officer of the Law | City of Stuart, FL |
| 7) David Dyess | Chief of Police (former) | City of Stuart, FL |
| 8) Michael Mortell | City Attorney | City of Stuart, FL |
| 9) Roz Johnson | Human Resources | City of Stuart, FL |
| 10) Dennis A. Gallas | Individual, Self-employed | Jensen Beach, FL |
| 11) William D. Snyder | Sheriff | Martin County, FL |
| 12) Katrina C. Christie | Jail, Deputy Sheriff | Martin County, FL |
| 13) Dee Randolph | Jail Deputy | Martin County, FL |
| 14) Stephanie Westbrooke | Jail Deputy | Martin County, FL |
| 15) Officer Lymon | Jail Deputy | Martin County, FL |
| 16) Officer Ewell (Petrocci?) | Jail Deputy | Martin County, FL |
| 17) Kaitlyn Bingham | Assistant State Attorney | 19th Judicial Circuit |
| 18) Nita Denton | Assistant State Attorney | 19th Judicial Circuit |
| 20) Theodore Roodhof | Asst. State Attorney | 19th Judicial Circuit |
| 21) Joseph Cracchiola | Supervisor | FL Dept of Corrections |
| 22) Officer Frank Ceja | Probation Officer | FL Dept of Corrections |
| 23) Officer Robin Hill | Probation Officer | FL Dept of Corrections |

8) As Plaintiff, was advised to file this cause under a new Case, this Complaint is submitted as Amended from Case No. 2:19-CV-14084 to include additional parties and events which occurred 🔲 from her initial filing in March 2019 forward.

9)                    **II. BASIS FOR JUSIDICTION**

(A) Under 42 U.S.C § 1983, the Plaintiff brings this claim alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and Federal Laws.

(B) State and local officials under 1983, includes the following Federal Constitutional and Federal laws, and statutory rights and violations occurring "under color of the law". Venue is proper as the United States District Court for the Southern District of Florida. as all events/incidents referenced herein and relied upon occurred in Stuart, FL in Martin County.

Plaintiff alleges violations of 1st, 4th, 5th, 6th, 8th, and 14th  Amendments.

10) **As it pertains to Defendants Stuart Police under the direction of Chief Dyess and City of Stuart, represented by City Attorney, Michael Mortell.**

Plaintiff's **1st Amendment, Freedom of Speech,** was abridged when Officer Vo, of the Stuart Police, when he did not follow FL Statute 741.28 and file a written report as Domestic violence to include investigation of incidents; notice to victim of legal rights and remedies (Policy 24, Reports, (IV)(A)  Once Alexander reported her concerns to Supervisor Cernuto she was **arrested** proximal to the date of her reporting, "Vo not doing his job."   Vo failed to take a written statement from Alexander at the time of incident while allowing the other parties, Gallas and O'Connell to make a written statements. When Alexander reported this to supervising Officer Cernuto, March 8, 2015, Alexander was arrested 3 days later March 11, 2015, **without a warrant.**

On April 13, 2015, when reporting stalking by Gallas, Alexander was arrested for reporting to 9-1-1 dispatch that Gerwan and Vo would not allow her to make a written statement or report. She was not "free" to speak to the dispatcher about the incident as the officers claimed it was abuse of 9-1-1 and attempted to seize her personal cell phone.

11) Plaintiff's **4th Amendment Rights,** Freedom from Search and Seizure, were violated when she was unlawfully searched and seized from her residence in a 55-plus community at 10:30 at night under the pretext that the officers, Osinga, Vo, Cernuto,, and Heitfelt, "had a warrant" and declared they were going to "ram her door down". The officers used SWAT team style tactics as recorded on Body Worn Cameras, on March 11, 2015. The officers proceeded to search Alexander's condo without a warrant. The officers actions resulted in a medical emergency situation that had not existed prior to their threats. Officers have a "DUTY of CARE" under FL Statute and the Constitution. The officers actions exposed Alexander to Intentional Infliction of Emotional Distress which carries tort liability under FL Statute and Federal Civil Rights claims.

12) Plaintiff's **5th and 14th Amendment Rights to Due Process**

In accordance with FL 741.29(1) Domestic Violence delineates the responsibilities of the Law enforcement officer who investigates. He/She will conduct an investigation in accordance with the Policies and Procedures of their employer (Policy 27 and 28) and in accordance with FL Statute 741.29 and apprise victim of their rights. In conjunction with the State Attorneys office, they are to file a criminal complaint. Procedural Due Process was violated when Officer Vo failed to comply with the Policy 28 which delineates "Procedure" in Steps II (Response) -VI (Follow-up Investigation) Pgs. 4-9. Vo and the assistant state attorney's officer failed to collaborate in investigating Alexander's claims.

Officer Vo did not conduct the investigation in compliance with Policy 27 and 28 or State Laws, 741. 28 Domestic Abuse, which created a **"fundamentally flawed"** investigation whereby Alexander was accused and arrested for Battery.  Evidence identified in the possession of Gallas, as ("7 minutes of video on Iphone") was collected or preserved in accordance with Policy or State law.  Evidence considered exculpatory in nature constitutes a Brady violation. Due Process violations are compounded by Plaintiff's simultaneous, warrantless arrests,  March 11, March 13, March 28, and April 13, 2015. Plaintiff identified such breach of this Policy and Procedure in her Citizen's Complaint of February 2018 submitted to City Officials Michael Mortell, Attorney and David Dyess, Chief of Police.   No formal hearing was conducted on the matter, though the city identifies one in it's formal complaint process, as SIRB hearing.  Alexander was denied the right to such hearing by Michael Mortell in April of 2018, when she asserted an ADA accommodation. Mortell demanded a letter for him to read. Plaintiff considered Mortell's actions as censorship under her 1st Amendment Rights to Freedom of Speech. Violations of 5th and 14th Amendment Right to Due Process, as it pertains to FL Statute on Domestic Abuse, 741.28,  Evidence collection, and Brady Material as was stated in Amended Complaint( Case No. 2:19-CV-14084)  paragraph 8, 41-46.

Defendant Dyess, former Chief of Police, continued to deny Alexander her due process when apprised of the Evidence and potential for exculpatory evidence. Dyess demonstrated Depraved Indifference when he failed to assign law enforcement officers, or detectives to obtained the video of "7 minutes" from Dennis Gallas' Icloud account. The Citizen's Complaint and INOI processes were represented as "Adminstrative Remedies" by Michael Mortell, and precursory to any State or Federal Civil action.

Alexander was denied police reports and evidence on file with the police department on March 8, and 11th, 2015, when she requested to see them at Stuart Police Precinct. Alexander was wrongly identified as the "aggressor" and charged without sufficient evidence and only on the statements of the other parties Gallas and O'Connell(who were actually the primary aggressors) and edited video of 55 seconds.  Gallas and Vo conspired to (frame) Alexander as the full video was not transmitted to evidence.

13) Plaintiff alleges her **5th Amendment Rights** were violated on numerous occasions by Stuart Police operating under the "color of law" as she was not notified of her Miranda rights while being arrested or questioned while being detained by officers without being "Mirandized". Most recent event occurred on July 25, 2019 when her process server served Federal Complaint upon the City of Stuart, while Plaintiff requested Public records from Human Resources, Roz Johnson.  While in the Human Resources front office, Stuart Police appeared and barricaded her in an intimidating manner so that she was not free to leave constituting an "unlawful detainment" or under False Imprisonment, FS 787.    Plaintiff was subjected to Intentional Infliction of Emotional Distress while fearful of arrest, in retaliation for the service of the Federal Complaint.

14) Plaintiff alleges her **14th Amendment Rights** were violated as to Evidence obtained and edited from "7 minutes" to 55 secs and submitted to Officer Vo's email per his instructions.  This violated Policy 27 and 28, as the video was used to coax and plea from the Plaintiff and was identified as incriminating.   The full video the of "7 minutes, was considered Brady Material under Rules of Evidence, could be exculpatory.

Officers Vo and Gerwan, were in violation when they responded to Alexander's call

on April 13, 2015 and failed to take her report. When she called for back-up using 9-1-1, the officers arrested her under pretext of violation without warrant or warning citation.

(D) As acting under the **"color of Law"** the following Officers and employees of the City of Stuart where to comply with FL Statute 741.28, Domestic Abuse.

Stuart Police Policy 27 and 28, are constructed and based in FS Statute, but the Stuart Police, collectively have a custom and policy of disregarding the Plaintiff's Civil rights. The FL Statute on domestic abuse delineates how to investigate and identify the parties, as 1) "primary aggressor", 2) victim, and 3) suspects and witnesses.

Officer Vo, as the lead officer in reference to the incident on February 27, 2015,  had the duty to investigate fully the claim, and collect evidence (Policy 27 & 28) is a function of job, the Stuart Police have no qualified immunity.  Stuart Police acted with wanton disregard for Plaintiff's safety and rights.  Brady material carries with it a duty to collect and protect the authenticity of the evidence.   Officer Vo was aware of video evidence and instructed Gallas to edit such which altered the verity. F S 918.13, Tampering with Evidence prescribes what "not to do." but Vo did it wi th Reckless Disregard for the victim's rights under FS 741.28.

Chief Dyess  in statement in email, stated " it's okay to get a clip, if that's what the officer instructed".  This demonstrates a pervasive attitude of wanton and willful disregard for FL Statute which arises to a Civil Rights violation in accordance with 42 U.S.C. 1983.

FL Statute 741.29(4)(b) **"Arrest is the preferred response only with respect to the primary aggressor and not the preferred response with respect to a person who acts in a reasonable manner to protect or defend oneself or another family or household member from domestic violence."**

Alexander's actions, observed in the 55 second video, were acts of defending oneself.

**15) As it pertains to the 19th Circuit Assistant State Attorney and all employees identified herein.**

As acting under the "color of the law", State Attorneys demonstrate a wanton and willful lack of Duty of Care which applies in regards to FL Statute 741.2901

In doing such, they violated Plaintiff's **5th and 14th Amendment Rights to Due Process and Equal Protection under the Law.**

FL Statute 741.2901 delineates Domestic violence cases; prosecutors duties; legislative intent; investigation; duty of circuits. It is the intent of the Legislation that domestic violence be treated as a criminal act rather than a private matter. The Prosecutors as such have a **DUTY OF CARE.**

As the fundamental process in creating a charge against a suspect includes the investigation, and acquisition of evidence, the state attorneys have a duty to investigate when it is reported that there is more evidence of a crime. *Brady v. Maryland.* The assistant state attorney office, Kaitlyn Bingham, Nita Denton, Theodore Roodof, knew of evidence or should have known, as Gallas' sworn statement identified a "7 minute video" in the possession of Dennis Gallas. Denton claimed "it didn't exist" and didn't pursue the matter further, when it was reported in February 2016 by Stuart Police. While knowing Brady material was more likely that not, to exist they "turned a Blind-eye" and proceeded to key on and prosecute the actual victim to Domestic violence, albeit, Alexander, without further interrogation or investigation. Due to the well established Statute and policies set forth, the State Attorney is not protected by Absolute immunity or Qualified immunity under the DUTY of CARE doctrine. FL Statute 741.290 establishes a Prosecutorial duty to disclose, as does the ABA Model Rule 3.8(D) The remedy for violation of Brady violation is reversal of the conviction, because the exculpatory evidence was "material" to the initial charge.

In June 2019, Theodore Roodhof was assigned  to prosecute a VOP resulting from the non-payment of restitution, but FL Statute does not support warrant for technical violation such as paying fines or restitution. *Mobley v. State* (2016)   He ignored the evidence Plaintiff presented, as a Settlement Agreement(SA)  and did not disclose to the court possession of said SA.   Roodhof continued to assert that Plaintiff should serve 3 years in prison, which caused severe Intentional Infliction of Emotional Distress. Plaintiff avers that these acts were done in retaliation for serving a Federal complaint on July 25, 2019.  She was incarcerated from August 3, 2019 - December 6, 2019.

16) **As it pertains to Martin County Sheriff and Deputies (named and unnamed).** Plaintiff avers that her **6th Amendment right to effective representation** was impeded by Officer Christie, by being place in solitary confinement on April 13, 2015 and held until May 21, 2015 when she was released on Probation.   Additionally, Plaintiff avers that her **8th Amendment rights** were violated as she was confined beyond the Model Jail standard of 30 days, without probable cause.

When Alexander was arrested on VOP June 6, 2015- December 6, 2019 and placed in solitary confinement by other deputies as a means to limit her Freedom of Speech, and Practice Religious beliefs. The actions of the Deputies were Malicious and "Outrageous". She was placed for periods of time in solitary confinement under the pretext of protecting her from other inmates.  Plaintiff avers that the Martin County Deputies had labeled her, targeted her, and continued to mistreat her with Reckless disregard for her Mental and physical health while causing **Severe Intentional Infliction of Emotional Distress.** From  August 23, 2019 - December 6, 2019, Plaintiff was held in Martin County Jail under the pretext of a VOP( non-payment of restitution).  Alexander was identified by

Officer Westbrooke as having brought a lawsuit against the Sheriff and other deputies.

Westbrooke threatened Alexander with solitary confinement numerous times, the first

being on August 24, 2019, first appearance hearing. Westbrooke confined Alexander to

her cell on numerous occasions, from August - December 6, 2019.

Alexander avers this violated her Procedural Due Process and Model Jail Standards under

FL and Federal Statute which arises to a **Violation of 5th and 14th Amendment Rights**

**(Equal Protection** under the law) and 8th Amendment protection against Cruel and

Unusual punishment. Alexander was denied administrative hearing or grievance process

identified in the Martin County Jail inmate handbook.

17) **As it pertains to FL Depart. of Corrections, Supervisors & Probation Officers.**

Plaintiff avers that her 14th Amendment right to Due Process was violated when

FL statute 948.06 (b) was not followed pertaining to charges of VOP brought in

conjunction with claims made by former Domestic Partner Dennis Gallas.

Officer Hill charged Alexander with technical violation(s) and not in accordance with FS

948.06 and FS 901.02, as alternative sanctions were not offered Alexander.  Plaintiff

avers that she was incarcerated on three(3) occasions by Hill's affidavits and warrants

sought.  She was not afforded evidentiary hearings before arrest.

Alexander had reported these suspected breaches of policy and procedure to Supervisor

Joseph Cracchiola, without avail. Hill was replaced by Officer Frank Ceja, in 2019.

Alexander reported 2 weeks before termination of probation, on or about May 5, 2019, a

Settlement Agreement waiving restitution. She was cited again for VOP, for "non-

payment" of restitution, which does not qualify for violation FS 948.06 and FS 901.02, as

non-payment of restitution is not a "crime".  Alexander was not afforded an evidentiary

hearing before the warrant was served. These violations in Florida Statute, Probation, were done without Due Process by law  and while the officers were acting, "under the color of law".

## III. STATEMENT OF THE CLAIM   "As a more definitive Statement" Page 4, Paragraph 11,  of City of Stuart Defendant's Motion to Dismiss, and Sheriff's Motion to Dismiss, Page 6.  These are Plaintiff's Responses

### FACTUAL ALLEGATIONS

**As to Defendant, Officer VO:**

18 )  Alexander alleges On February 27, 2015, Officer Vo, the lead investigating officer called to a Domestic matter at 2600 Ocean Blvd. Vista Pines Community.  Vo initially approached the Plaintiff, (herein after Alexander) who identified Gallas and O'Connell as the "primary aggressors". Vo failed to follow protocol in Policy 27, and 28, and FS. 741.28.  Failure to follow policy and statute lead to a violation of Plaintiff's rights to Due Process. 5th and 14th Amendment.

19)   Alexander alleges on February 27, 2015, Officer Vo states in his affidavit of March 12, 2015, " I tried to ask Alexander what happened at the scene prior to my arrival", Alexander told me that "prior to my arrival two individuals were pulling on her arm and pushing her." Alexander was referring to Dennis Gallas and Joyce O'Connell.

20) Alexander alleges, and a second time,  she reported to Officer Vo, as stated in his affidavit of March 12, 2015, "Alexander said,  O'Connell grabbed her first on her waist by the door and then she defended herself."   Alexander alleges there was probable cause for arrest of Gallas and O'Connell as "primary aggressors".  Vo established a custom and practice, "under the color of law" that lead to the Violation of her civil rights.

21) Alexander alleges, Vo failed to consider this as a statement of fact and obtain a timely written statement, as Gallas and O'Connell were the **"primary aggressors"**. (Dereliction of Duty, FL Statute 748.29)  The investigation is the "gateway" to the judicial process, and was done with Reckless Disregard to the Plaintiff's right to Due Process.

22) Alexander alleges, Vo visited Alexander at the hospital after taking statements from the other Parties, albeit Gallas and O'Connell, and while there served a Trespassing warning to Alexander.  Vo was then informed for a second time, by Alexander, "O'Connell grabbed her first on her waist by the door and then she defended herself." Vo continued to demonstrate a wanton and willful disregard for Alexander's claims of Domestic Abuse.  Vo did not follow-up the **"next day"** in accordance with Policy 28.

23) Alexander alleges, Vo did not inform her that there was video evidence that she could acquire as a matter of public record, nor that she was video-tapped and suspect of the crime of battery.  Based on Alexander's statements at the time, Alexander was the victim.

24) Alexander alleges, Vo was to follow Policy 27, and 28, for Evidence collection and Domestic abuse, and the provisions for Victim Reports in accordance with Statute 741.28 and 741.29, for Law Enforcement.   Alexander avers that Vo violated her right to Due Process when he did not follow department policies as set forth by FL Statute and while acting "under the color of Law".  Vo was acting in his official capacity and knew his actions would culminate in the violation of Alexander's Civil Rights to Due Process.

25) Alexander alleges, Vo returned to get the written statements from Gallas and O'Connell on or about March 2, 2015, but did not provide her with "Equal Protection".

26) Alexander alleges, she went to the Stuart Police on March 8, 2015, to make written

statement. Vo denied her that right as she had accused Vo of "not doing his job."

Alexander requested to speak to Vo's supervisor, Sergeant Cernuto. When she explained

her concerns to Cernuto, he demonstrated Depraved Indifference, rather than say he

would investigate further.  Cernuto stated, "they could use force" and failed to obtain

video as "7 minutes" or instruct Vo to investigate further. ((Captured on BWC)

27) Alexander alleges, while at Stuart Police on March 8, 2015 and March 11, 2015, she

met Sergeant Derek Ortado, and requested the Police report of the incident on February

27, 2015 and was told it was unavailable to her which she considered a denial of Public

Records.  Ortado was apprised of her mental state from the incidence of Domestic abuse

and continued harassment by Gallas in text messages since the incident.

28) Alexander alleges, on March 7, 2015, O'Connell made another statement and

requested Alexander be charged, but the same opportunity was not allowed Alexander.

as Equal Protection under the Law. ( Policy 27 and 28)

29) Alexander alleges, on March 11, 2015, Officer Vo and 3 other officers from

Stuart Police did arrive at her residence and hammered and threatened to "Ram your door

down" at 10:30 pm after she had turned in for the evening. (Captured on BWC).

30) Alexander alleges, the officers claimed to have a warrant for her arrest in order to

gain access to her property(home), but misrepresented the possession of a warrant.

31) Alexander alleges Vo and the 3 other officers demonstrated willful and wanton

disregard by using "SWAT-team" tactics in a quite 55-plus community at 10:30 pm,

while knowing Alexander had expressed she had PTSD while she was at the Stuart Police

station on March 8, and March 11, 2015 (Captured on BWC at her condo)

32) Alexander alleges, the officers used Excessive force, threatening to "Ram her door down" which triggered a Panic attack. When it was discovered in a phone conversation that she had taken too many of her prescription medications, the officers did not offer treatment or call for Medical attention which demonstrated Depraved Indifference.
The officers actions demonstrated Depraved Indifference which contributed to Intentional Infliction of Emotional Distress, by failing to call for medical assistance.

33) Alexander alleges, she called the EMT's and when they arrived, the officers gained access to her home, but never presented the "warrant" they claimed to have and proceeded to search her premises and personal property.

34) Alexander alleges she was not ever personally served a warrant for her arrest by Stuart Police even though she was apprehended at Martin Memorial, on March 13, 2015, by Officer Heitfelt, who was present the night of March 11, 2015.

35) Alexander alleges the acts of the officer were of Willful and Wanton Disregard for Alexander's safety and did in fact subject her to Intentional Infliction of Emotional Distress, as they had prior knowledge of her emotional state and Medical Diagnosis of PTSD.  Officers Vo, Heitfelt, Osinga, and Cernuto's actions were Outrageous.

36) Alexander alleges Vo was involved in at least 3 more attempts by Gallas to report Alexander as a suspect in criminal acts though there was no proof of such. ( Police reports)   Alexander avers that Gallas and Vo developed a relationship that violated Vo's Code of Ethics and his ability to remain unbiased and professional in his approach.

37) Alexander alleges, on April 13, 2015, she called for assistance as Gallas was stalking and chasing her in her own community common area.  Vo and his supervisor Sergeant Gerwan, refused to take a report and when leaving, she called for back-up and the

officers arrested her without Mirandizing her, and dragged her to the ground, and to their

police cruiser, without advising her of the charge  At the Police station, when she insisted

she be told why she was arrested, and that she was not given her Miranda Rights. an

unidentified officer told her "we don't have to give you your Miranda Rights".  (Captured

on BWC)

38) Alexander alleges this arrest triggered a Violation of Due Process, as she was

held without bond due to the number of previous arrests and assumption of guilt.

These arrests created a custom and practice whereby Alexander was identified

as a "repeat offender."  The 9-1-1 misuse qualified as an infraction, as such a citation

would have been more appropriate, rather than an actual arrest using Excessive force.

39) Alexander alleges, when she was told of  "a video" of the events on or about

May 21, 2015, she had not been given previous opportunity to know of the evidence,

by the Stuart Police, though it was in their possession, (constituting a Brady violation)

Alexander had made a Public records request for Police report on March 8 and 11, 2015.

40)  Alexander alleges, that Vo and Gerwan's actions on April 13, 2015 were that of

Malice, as she identified Vo from the previous incidence on February 27, 2015.

41)  Alexander alleges, that Vo knowingly withheld the video evidence and when it was

brought to the attention of the City attorney Michael Mortell, and Chief Dyess, only 55

secs. video was provided to Alexander via email by Mortell on/about February 7, 2018

Public records were repeatedly withheld from Alexander on request, as demonstrated that

a video existed in March of 2015, but was not made available until February 2018.

**Policy 27(III)(A)(4) Officers are not authorized to Open, Edit, Alter, or Delete any original
images captured regardless of image quality. Poor image quality images will also be submitted to
maintain the integrity of the image series.**

42) Alexander alleges, she made the Chief Dyess, aware of the claim of Tampering with the evidence (January 2018) and identified Gallas and Vo as editing the video, Dyess demonstrated Willful and Wanton Disregard for obtaining the evidence (Policy 27) from Gallas. The video was identified in sworn Police statements, text messages to Alexander from Gallas, and reported to Officer Sudoff, as "7 minutes" on Gallas' Iphone and Icloud account, **atpcoachd@Icloud.com** in emails sent from Michael Mortell, City Attorney.

**As to Defendant, Officer Chris Heitfelt:**

43) Alexander alleges, on March 8, 2015, Officer Heitfelt (herein after, Heitfelt) arrived at Alexander's condo in Vista Pines and asserted he had "tracked an unknown number to her address", and continued to question her under the pretext of investigating the battery. (Captured on BWC). Heitfelt made false statements to coax testimony out of Alexander without apprising her of her rights as, Miranda rights. (5fh Amendment)

44) Alexander alleges that Heitfelt ordered Alexander to give him her cell phone, and when she offered "don't you need a warrant for that", he continue to question while asked to leave. ( Failure to Mirandize)   Witness present, as Mr. Kim Coffey.

45) Alexander alleges Heitfelt then proceeded to interrogate Alexander about phone calls that someone made to neighbors and that he could charge her for Impersonation. She admitted to making the calls but that she "never" identified herself as a Law enforcement officer. Alexander was not given an opportunity to make a written statement.

46) Alexander alleges Heitfelt did not apprise her in any way of her rights to counsel or that she was suspect to crime, by suggesting to Mirandize her though she was being detained and interrogated in her own home. (5th Amendment)

47) Alexander alleges Heitfelt (one of 4 officers) present the night of March 11, 2015, when she was "SWAT-teamed".   As such Heitfelt, had an opportunity to acquire a warrant for arrest, but failed to present a warrant.  (5th and 14th Amendment violation), Alexander was seized without being told her Miranda rights, reason for her arrest and without a warrant.

48) Alexander alleges Heitfelt lied to extract information from her in relation to a crime under wrongful pretext, and did fail to Mirandize her on all occasions, albeit, March 8, March 11, 2015, and March 13, 2015 when he apprehended Alexander at Martin County Memorial Hospital to take to Martin County Jail ( 5th and 14th Amendment rights)

49) Alexander alleges the officers present used Excessive force and failed to use BWC's appropriately on the night of March 11, 2015 in accordance with Policy 53,  (Captured on BWC) as the camera was stopped and started numerous times during the incident. As BWC recordings can be used as evidence in a trial this violated Alexander's Due process.

50) Alexander alleges, Officer Heitfelt failed to demonstrate a DUTY of CARE,  and continued to use excessive force and demonstrate Outrageous behavior, while "SWAT-team" tactics were used on March 11, 2015.

51) Alexander alleges, Officer Heitfelt, the arresting officer on March 13, 2015, when he retrieved her from the hospital, failed to serve a warrant. Alexander awakened at Martin County Jail. She identified bruising on the backs of her thighs, which only Heitfelt could have caused, as he was the arresting officer. Heitfelt used Excessive Force as Alexander was unconscious at the time of arrest.

52) Alexander alleges Heitfelt demonstrated  Willful and Wanton Disregard to her

physical and emotional state of well-being as he and none of the other officers called for

Medical assistance on March 11, 2015.

53) Alexander alleges, Vo and Heitfelt as the "initial responding officer/ arresting officer

were responsible for follow-up in the case" and as such failed to conduct a follow-up

investigation "**the day after**", and failed to investigate Alexander's claims that she had

been "assaulted" by Gallas and O'Connell.  (Stuart PD Policy 28, pg 9, VI, Follow-up

Sect. VI, A and B) Alexander alleges Officer Vo and Heitfelt actions were Depraved

Indifference and Willful and Wanton disregard to her rights to due process.

**As it pertains to Defendant, Sergeant Cernuto:**  (Supervising officer of Vo, Heitfelt)

54) Alexander alleges, Officer Cernuto (herein after Cernuto) failed to instruct Officer

Vo of his duty to obtain written statements from all parties in conjunction with FL Statute

741.28, Domestic Abuse, when it was discovered that Gallas and Alexander were former

Domestic partners.  Cernuto in his supervisory capacity demonstrated Depraved

Indifference and failed to do any follow-up investigation as a custom and policy.

55) Alexander alleges Cernuto on March 8, 2015, commented that Gallas and O'Connell

had a "right to use force" against her when she had explained how they "grabbed" her and

dragged her. ( Captured on BWC) Cernuto's comments were taken as Willful and Wanton

Disregard to Alexander's claims of assault, while acting under the "color of law".

56)  Alexander alleges, Cernuto was the lead officer the night of March 11, 2015 and as

such had an obligation to prevent further injury to her as he was aware of her fragile

emotional state from her report on March 8, 2015, as a "Duty of Care". Cernuto directed

his officers to use "SWAT-team" tactics, misrepresenting they had warrant for arrest, and

Depraved indifference. Cernuto knew Alexander was in a state of Medical emergency and failed to call for EMT assistance. Cernuto had a responsibility to instruct his officers as a "Duty of Care" existed, yet Demonstrated Depraved Indifference, Excessive force, and misrepresented he had a warrant, when he in fact did not. Cernuto acted with Malice. Officer Cenuto had superior vicarious liability as Supervisor to Vo, Heitfelt, and Osinga.

**As it pertains to Defendant, Sergeant Derek Ortado:**

57) On or about March 9-10, 2015, Alexander requested Police reports at Stuart Police station and while there requested to speak to supervisor on duty, Sergeant Derek Ortado.

58) Alexander alleges she informed Ortado of Gallas' abusive nature and harassing text messages and that O'Connell and Gallas had both assaulted her on February 27, 2015.

59) Alexander alleges Ortado failed to investigate the claim of Domestic Abuse further or assign an officer or detective to do so, demonstrating Depraved Indifference.

60) Alexander alleges Ortado signed Vo's affidavit in regards to the events of February 27, 2015, but did not follow-up in compliance with Domestic statute FS 741.28, which demonstrated a pervasive attitude of Depraved Indifference.

61) Alexander alleges an investigation is done in the functional role of a Police officer. It is the gateway to the judicial process. Lack of action of Ortado and Cernuto contributed to a violation of her Due Process. Policy provides for "follow-up" the "next day". Lack of action to recover a video noted in sworn statements as "7 minutes", created a Brady violation as Alexander asserts the video contained exculpatory evidence. Officer Ortado had superior vicarious liability as he trained and instructed subordinate officers, and that violation of Policy and Statute lead to deprivation of civil rights.

**Policy 27(III)(A)(4) Officers are not authorized to Open, Edit, Alter, or Delete any original images captured regardless of image quality. Poor image quality images will also be submitted to maintain the integrity of the image series.**

**As it pertains to Defendant, Sergeant Michael Gerwan:**

62) On April 13, 2015, Officers Gerwan and Vo, responded to Alexander's 9-1-1 call
when her former Domestic partner, Dennis Gallas was pursuing her in Vista Pines.

63) Alexander alleges she identified Vo as the officer that had "failed to do his job"
on February 27, 2015 and when she did the officers refused to write notes or report
and turned to walk away. which demonstrates a pervasive attitude of Reckless Disregard.

64) Alexander alleges, when she called 9-1-1, the officers returned to encroach
upon her in her doorway, and take her to the pavement in front of her condo,
without a warrant and without cause. Alexander alleges officers used Excessive force, as
she was cuffed and dragged to their police cruiser and arrested for a minor infraction,
instead of warning citation. (8th Amendment, Cruel and inhumane treatment)

65) Alexander alleges Vo and Gerwan attempted to seize her cell phone without a
warrant and arrested her under the pretext of 9-1-1, when she "spoke up" about
Vo's lack of professionalism and duty to investigate.  (CAD report and audio recording)

66)  Alexander alleges the arrest on April 13, 2015 subjected her to another arrest and
held without bond.   The Officers actions were Malicious and Outrageous.

67) Alexander alleges Sergeants Cernuto, Ortado, and Gerwan  as supervisors were
apprised of the Domestic relationship and Alexander's claim of battery by Gallas
they failed to demonstrate a DUTY OF CARE and follow state laws as to FL Statute
741.28 which delineates the protocol for handling Domestic cases.   As such they
demonstrated Depraved indifference and used Excessive Force leading to a deprivation of
Alexander's civil rights, as violations of  Amendments 5th, 8th and 14th, Due process and
Excessive force.

68) On or about February 2, 2018, Alexander filed a INOC complaint recommended by Michael Mortell, Stuart City attorney. The INOC described alleged violations as False Arrest, Excessive Force, and False account of events in police report by Vo and Gerwan.

69) Alexander's claims failed to be investigated in accordance with Policy 21. There was no follow-up, Alexander was not interviewed. Alexander obtained a CAD report and Audio recording of the events described in report of February 2, 2018.

Officer Gerwan in his supervisory capacity demonstrated wanton and willful disregard for the Plaintiff's rights and Depraved Indifference to her safety.

**As it pertains to Sergeant Charles Buchanan:**

70) In December of 2017, by and through public records search Alexander obtained the statements of Dennis Gallas and Joyce O'Connell.

71) Alexander alleges, she informed Chief of Police, Dyess of her concerns that Vo had not acquired the full video of (7 minutes) rather than the 55 secs. that was in evidence as a Brady violation.

72) Alexander alleges she was informed by Dyess of the INOI forms on line and that she obtained them and returned them on February 2, 2018. Chief Dyess commented that Alexander was just being a "vengeful woman" which demonstrated a pervasive attitude.

73) Alexander alleges she received a phone call in January 2018, from Sergeant Charles Buchanan and was asked about specific details of the February 27, 2015. Alexander conveyed that she believed Gallas had Tampered with the evidence that brought the charge of Battery of an Elder. She also, reiterated her claim of Battery(Police statements, pictures and med, recs, Feb. 27-28, 2015), False Imprisonment (as locked on the lanai),

Tampering with evidence  (7 minute video recorded by Gallas) and False reports to Police(3-4 reports to Vo). All carry 3-year statute of limitation, as 3rd degree felonies.

74)  Alexander alleges Gallas was interviewed by Buchanan by phone.  Neither she nor Gallas were required to make sworn written statements, as is standard policy and procedure in compliance with Internal Investigations Policy 21 and Policy 28 Domestic Violence, and FL statute 741.28.  Buchanan's actions demonstrated Depraved indifference for  Plaintiff's rights to Due Process and a custom, practice and policy within the Department which leads to Deprivation of Civil rights to Due process.

75) Alexander alleges Buchanan failed to comply with Policy 21(G)(3) and failed to: obtain relevant facts with recorded sworn interviews, 3(a) review all pertinent reports and other data, especially Police statements made by Dennis Gallas of March 3, 2015, as Gallas' statement of "7 minutes" of video was sworn to, 3(a)(2) Further witnesses that should be interviewed, (albeit Joyce O'Connell) and 3(a)(3) Point out conflicts with other statements and ask for explanations. Obtain a Polygraph test in accordance with Policy 21

76)  Alexander alleges when Buchanan discovered gross inconsistencies between Gallas' statements and Vo's reports(Vo's affidavit of events of February 27, 2015), he should followed Policy 21 G(7)(f) Polygraphs. Buchanan demonstrated Depraved Indifference.

77) Alexander alleges she was not offered to take a polygraph, nor does she believe any other parties to the complaint, Vo or Gallas were required to take polygraphs.

78)Alexander alleges when Buchanan reported his findings,  Chief Dyess failed to act by further investigating the matter of inconsistencies in Police statements and obtaining the "7 minute" video or a sworn statement from Gallas as to the contents of the "7 minute" video it demonstrated a Pervasive attitude of Depraved Indifference.

79) Alexander alleges that the Stuart Police represented the edited 55 second video as "factual" account of the events on February 27, 2015 and submitted it as such to the State Attorney while knowing contrary evidence existed, and probable cause that Gallas had Tampered with the Evidence and was the "Primary Aggressor", FS. 741.28.

80) Alexander alleges that Buchanan accepted Vo's explanation though it contradicted his previous affidavit of events, and required further testing (albeit Polygraph) to determine the truthfulness of Gallas' and Vo's statements. (Policy 21(G)(7)(f). Buchanan's actions demonstrated Willful and Wanton Disregard for Plaintiff's Civil Rights, 5th and 14th Amendment to Due Process and Equal Protection.

**As it pertains to Chief of Police, David Dyess:**

81) Alexander alleges that during this investigation when she apprised Chief Dyess of her concerns that Vo and Gallas made contradictory statements in INOI investigation that it constituted criminal perjury. Buchanan was not instructed to do any further investigation of witnesses or testing such as polygraph in accordance with Policy 21.

82) Alexander alleges in January 2018, Chief Dyess was notified of her concerns, and made a statement that she was just a "vengeful woman". (Equal Protection under the law)

83) Alexander alleges that Chief Dyess further made comments that it was "okay" for an officer to instruct a party in an investigation to "edit" the only video of the incident rather than submit the full authentic video into the record. The video was edited from an original "7 minute" version and possessed by Dennis Gallas to 55 secs forwarded to Officer Vo, as reported by Gallas and Vo in sworn Police statements and affidavits.

**Policy 27(III)(A)(4)** Officers are not authorized to Open, Edit, Alter, or Delete any original images captured regardless of image quality. Poor image quality images will also be submitted to maintain the *integrity* of the image series.

84)  Alexander alleges she furnished Dyess accounts of the events in a INOI and Citizens' Complaint and forwarded to Attorney Michael Mortell in January and February 2018.

85) Alexander alleges the Citizen's Complaint contained actual Police statements, text messages, and pictures containing the sworn statement of "7 minutes" possessed by Gallas presented a "window of opportunity" for Stuart Police to acquire the video and no effort was made by any officers or the Chief to acquired said video from Gallas' ICloud account. (Brady material)

86) Alexander alleges at no time during her complaint process from December of 2017 until April of 2018, did Dyess or any other officer of Stuart police attempt to obtain or retrieve the "7 minute" video from Gallas' Icloud account which would be considered exculpatory evidence, as Brady material.

87)  Alexander alleges that Dyess in his supervisory capacity is charged with the responsibility for training, instructing and disciplining his officers in acordance with Fl Statute to prevent foreseeable Civil rights violations and failed to do so, which demonstrated Depraved Indifference to the Plaintiff's Civil Rights to  Equal Protection.

88) Alexander alleges in preparation for writing this 2nd Amended Complaint has sought the Policy and Procedures for policy pertaining to Police Reports and has been denied these policies as they are not available online.   Policy 27 was provided the week of March 17, 2021, by Ms. Hearn through Public records portal, as follows,

**Policy 27(III)(A)(4) Officers are not authorized to Open, Edit, Alter, or Delete any original images captured regardless of image quality. Poor image quality images will also be submitted to maintain the *integrity* of the image series.**

**As it pertains to Defendant Michael Mortell, Stuart City Attorney.**

89) Alexander alleges in February 2018, Mortell was apprised of Alexander's complaints, Alexander submitted her Citizen's Complaint(C.C.) and supporting evidence through

Administrative Assistant Nicole King who forwarded it to Michael Mortell by email.

90) Alexander alleges Mortell received her Complaint on or about February 7, 2018. The C.C. contained over 100 pages of accounts of events, Police reports, Medical reports of her injuries, Text messages from Gallas, and claims of violations and arrests by officers. Alexander alleged a "fundamentally flawed" investigation by Vo on February 27, 2015.

90) Alexander alleges Mortell was apprised that the initial video as stated by Gallas, was "7 minutes" and edited to 55 secs.  Mr. Mortell emailed Alexander 3 versions of the 55 sec. video which she had not seen before.  The video was sent from Dennis Gallas Icloud account to Officer Vo email account dated Feb. 27, and 28, 2015. and Violated Policy 27.

91) Alexander alleges she consistently held that the Stuart Police were responsible for obtaining **any and all** evidence from the crime scene in compliance with Policy 27, and 28 and FL Statute 741.28, and advised Mortell as such.  Mortell made no effort to recover the "7 minute" video or assign an officer or detective to investigate further.  As Mortell was in the "Chain of Command" he had an obligation of due diligence or "Duty of Care."

92)     Alexander alleges that Mortell apprised her of the SIRB hearing and bylaws, and when she was asked for ADA accommodation by way of conference video, he denied Alexander this accommodation. Mortell  demanded she write a letter for him to read at the hearing in lieu of her attendance.  When Alexander bulked at the idea,  the meeting was then cancelled by Mr. Mortell without further notice to Alexander.

93)     Alexander alleges that she consistently told Mortell she believed this to be in violation of her rights as to Freedom of Speech and that a letter would be "censorship." Mortell demanded Alexander get a letter from her doctor.   Alexander complied.

94) Alexander alleges as Dyess was in line to be promoted to City Manager, he had motive to "bury his head in the sand" to avoid a foreseeable oversight of the Domestic claim, rather than have a mark against his leadership abilities. When the Citizen's Complaint was to be heard at an SIRB hearing in April 2018, it was cancelled by Michael Mortell, which abridged Alexander's Administrative remedies and gave rise to Civil rights violations of Due Process under 42 U.S.C. 1983.

95) Alexander alleges on July 25, 2019, she accompanied her Process server to Stuart City Hall, while he served her Federal Complaint.   She went to Human Resources to obtain discipline records for Officer Vo and Heitfelt which she had previously requested.

96) While waiting in the front office, as instructed by Roz Johnson, Alexander was approached and barricaded by a number of Stuart Police Officers and not allowed to leave. These actions of city employees, Roz Johnson, and Stuart Police arise to Intimidation and Unlawful Detainment, False Imprisonment.

97) Alexander alleges she was barricaded, and within moments Mr. Mortell arrived behind the officers and instructed them to allow Alexander to leave.  Mr. Mortell was not present upon Alexander's arrival.  Mortell's arrival indicated he had been notified as well by Roz Johnson, as Johnson was the only one that knew Alexander was in the building.

98) Alexander alleges Mr. Mortell's actions on July 25, 2019 were consistent with retaliation and intimidation for her filing and serving of the Federal Complaint.

**As it pertains to Roz Johnson, Human Resources, City of Stuart**

99) On or about April 13, 2018, Roz Johnson was identified by the Plaintiff as the person who completed the investigation of the Citizen's Complaint. It was Alexander's understanding as it was communicated by Michael Mortell, **the City Manager** was to

"sign off" on the complaint and then an SIRB hearing would be held as to review the final decision, to either "agree" or "disagree" with the decision.

100) Ms. Johnson's statement and decision in regards to the behavior of law enforcement officers, only addressed Chief Dyess in his official capacity and claimed no Policy was breached. The Citizen's Complaint was signed by Johnson, and not the city manager as Mortell has claimed in recent emails.

101) Alexander alleges there were over 20 pages (pages 80-104) designated to the Tampering with Evidence claim in the Citizen's Complaint which included Officer Buchanan's investigative notes and reports, and Officer Vo's and Gallas' interviews. Alexander alleges to date no SIRB hearing has been held. It was represented by Mortell that a hearing finalized the Citizen's Complaint process. Mortell claimed the matter was final by Roz Johnson's findings. This does not comply with SIRB bylaws and procedural due process.

102) Alexander alleges, on July 25, 2019, she made a public records request. Alexander made known to Johnson that Alexander's process server was across the hall serving a civil action in which Johnson was a Defendant, and as such Alexander should not be talking to Johnson and asked for a records clerk.

103) Johnson presented Alexander with Public Records request forms and excused herself to the back office area. Within minutes of Johnson's disappearance, Alexander was barricaded in Johnson's front office by Stuart Police in an intimidating fashion. Alexander was not "free to leave" as the officers blocked the doorway by which she could exit.

104) Alexander alleges she questioned their reason for being there and was told it was reported that "she had a gun".   Alexander asked the officers if they were recording on their BWC and was told "yes" by Officer "M".   Alexander also identified who she thought was Gerwan. or Cernuto, as she had seen both during her former arrests.

105) After a brief period of questioning and detainment, Mortell arrived and dismissed the officers and only then was Alexander allowed to leave the building. Alexander alleges she was being intimidated and restrained from leaving voluntarily in retaliation for filing and serving her Federal complaint against the City of Stuart.

106) Alexander has since made a public records request (Feb/March 2021) for surveillance recordings from front office, BWC recordings, CAD reports, and the forms she signed.   Alexander received the CAD report and it is noted where Roz called the Chief of Police assistant Lisa and officers were dispatched to City Hall for a "disturbance".   Alexander also received the signed public records request she made on July 25, 2019. Alexander requested surveillance or BWC recordings of the events.

107) Alexander  alleges that Johnson's actions were consistent with retaliation and intimidation for Alexander filing her Federal Complaint and serving to the City of Stuart.

**As it pertains to Defendant, David Dyess, former Police Chief,  now City Manager**

108) Alexander alleges she reported her initial complaints to Chief Dyess, as INOI complaints against Officers Vo and Gerwan, **February 2, 2018**, as Excessive Force, False Arrest and False Police reports.  ( INOI included with C.C)

109) Alexander alleges she reported her subsequent INOI complaint and notarized on February 7, 2018.  The INOI identified Vo, Cernuto, Ortado, Heitfelt, Gerwan, Buchanan, and Chief Dyess for Disregarding Policy 27 Evidence, and 28 Domestic,  and

as to crimes committed by Dennis Gallas, as Battery, False Imprisonment, and

**Tampering with Evidence**.   There was Probable cause to make arrest any or all of the

charges in accordance with FS Statute for Felonies of the 3rd degree.

110) Alexander alleges Dyess consistently demonstrated an attitude of **Depraved**

**Indifference** when he made comments to the effect, she was a "Vengeful woman"  and it

was "okay", if his officers instructed witnesses possessing evidence to edit, alter, hide,

destroy...etc.as "it might just contain Scenery." ( Tampering Case No.16-02103)

   **Policy 27(III)(A)(4)** Officers are not authorized to Open, Edit, Alter, or Delete any original
images captured regardless of image quality. Poor image quality images will also be submitted to
maintain the integrity of the image series.


Chief Dyess failed to obtain Brady material and refused to charge Gallas with any crime,

though Alexander had reported Battery, False Imprisonment, Lying to Law enforcement,

Perjury, and there was sufficient "Probable cause" and evidence of the crimes. Dyess'

comments of Alexander being a "vengeful woman" demonstrated Depraved Indifference.

All claims were brought within the 3-year Statute of Limitations for 3rd-degree felony.

111) Alexander alleges Dyess was aware or should have been aware that Gallas made

sworn statements to the effect that he "had over 7 minutes of video on his Iphone."

in Police statements of March 2, 2015, text messages of March 6, 2015, and subsequent

statements as these were provided in her Citizen's Complaint in February 2018.

112) Alexander alleges Dyess assigned Charles Buchanan to investigate the claim and to

find there was no probable cause to charge Gallas with any crime.   There was substantial

evidence as to Gallas' being the perpetrator of criminal acts as named in the INOC.

113) Alexander alleges that Dyess failed to charge Gallas, while there was substantial

evidence that he committed perjury by contradiction, FS 937.021.

837.021 Perjury by contradictory statements. (1) Except as provided in subsection (2), whoever, in one or more official proceedings, willfully makes two or more material statements under oath which contradict each other, commits a felony of the third degree, punishable as provided in s. 775.082,

114) Alexander alleges that Chief Dyess' lack of police action, demonstrates a pervasive attitude within the Stuart Police that it is "okay" to violate Policy and Statute, which ultimately leads to a deprivation of Civil rights of the complainant.

115) Alexander alleges the collection of evidence (Policy 27), is a part of the initial investigation and precursory to any judicial proceeding. As such Law enforcement officers are not protected by any form of immunity when they don't comply with Policy or act in an egregious manner or with malice, under the "color of law".

116) Alexander alleges by way of comments of "vengeful woman" and it's "okay", Dyess demonstrated malice for Alexander as the complainant in an administrative proceeding, as Citizen's complaints, and INOC were filed in accordance with Policy.

117) Alexander alleges Chief Dyess was in line to be promoted to City Manager in April 2018. As such, Dyess had motive to "turn a blind eye", which demonstrated Willful and Wanton Disregard for Plaintiff's rights. rather than have any question as to his leadership abilities. When the Citizen's Complaint was to be heard at an SiRB hearing, it was cancelled by Michael Mortell. which abridged her rights to be "heard" in a public forum.

**DA   As it pertains to the Assistant State Attorney(s)**

118) On February 12, 2016, Alexander alleges she sent a letter to Kaitlyn Bingham notifying her that Dennis Gallas had "7 minutes" of video as reported in his initial Police report of March 2, 2015.

119) On February 16, 2016,  Officer Sudoff presented a charge of Tampering with Evidence to ASA Nita Denton,  who then stated "there is no evidence the defendant (Gallas) ever had the video or phone", though 55 seconds was in state's possession.

120) Alexander alleges that neither Bingham nor Denton reached out to her to obtain further evidence that Gallas was in fact the "primary aggressor", in accordance with FSS 741.2901 (Domestic violence cases; prosecutors; legislative intent; investigation; duty of circuits). The ASA's demonstrated Depraved Indifference to her victim rights.

121) Alexander alleges in the events of February 27, 2015, Gallas and O'Connell both "had their hands on her" as reported to Officer Vo of the Stuart Police and in Vo's police report. On March 2, 2015, Gallas identified himself as having "7 minutes" of video on my Iphone" and to Alexander in text, "I have 7 minutes, the police saw everything."   Bingham and Denton demonstrated willful and wanton disregard for Alexander rights as a reported victim to Domestic Abuse, as Crime by FS. 741.290

122) Alexander alleges that the ASA Kaitlyn Bingham did use evidence that had been Tampered with as a "7 minute" video was edited to 55 secs. and this video was used to charge Alexander with a felony. Bingham was informed in a letter of Feb. 12, 2016.

123) Alexander alleges the Statute and Police policies which apply to domestic violence are specific in charging the Officers and State Attorney with the responsibility to investigate, or assign the investigation to a detective.   Neither Stuart Police nor ASA Bingham or Denton, investigated the matter further which violates Due Process.

124)  Alexander alleges that she was continued to be "keyed" on as the suspect when the Medical evidence and statements revealed Gallas and O'Connell had battered her.

125)  Alexander alleges ASA Bingham used only Police Statements from Gallas and O'Connell and an edited video to charge Alexander, while knowing or should have known there was additional evidence to the contrary. (Brady Material violation)

126) Alexander alleges ASA Bingham was "more than friendly" in the relationship

with Gallas and biased professionally and continued to prosecute Alexander for technical

VOP's, without investigating the claims from Gallas, as a "butt-dialed" phone call, an

email from Jennifer Gamble to Gallas' website, both of which are not considered "crimes"

in accordance with FS 948.06, Probation, and FS 901.02. Alexander was not offered an

"Alternative Sanction" but was instead arrested for minor infractions.

127) Alexander alleges ASA Bingham and Denton had an obligation under Brady

Law to disclose any evidence that would tend to "negate the guilt" of the defendant

and both failed to do so in February 2016, which continued to expose her to VOP reports.

128) Alexander alleges proximal to her reports, in February 2016, she was again accused

of VOP by Gallas/ Bingham prosecuted the VOP from Gallas' claims in April 2016,

without giving Alexander an evidentiary hearing.

129) Alexander alleges she filed with the court for an early Termination for

Probation in October of 2016, and Gallas then reported another VOP.. Bingham

continued to prosecute technical violations and threaten Alexander with Jail time, though

the appropriate remedy was to offer a less severe options, such as community service.

130) Alexander alleges she was incarcerated for 2 VOPs until such time that she was

forced to plea, without being offered Alternative sanctions.

131) Alexander alleges Bingham continued to prosecute with malice, and on

her 3rd VOP, Alexander was forced to take an extension of 1 year probation,

$2000.00 restitution for Gallas for investigative costs (though evidence to the contrary

was identified) as the IP addresses in emails, did not "match".

132) Alexander moved to Tennessee in fall of 2016 to avoid any appearance

of impropriety involving Gallas. In Spring of 2017, Gallas brought another

VOP claim, for which Alexander was threatened by Bingham with Jail time.

133) Alexander alleges she brought a State claim under 768.28 for Negligence and the claim was dismissed for failure to serve a Statutory letter within the statute of limitations, of 3-years of the notice and Absolute immunity.

**As it pertains to the Department of Corrections and Assistant State Attorneys:**

134) Alexander alleges in May of 2019 as she approached her termination date of May 21, 2019, she notified her Probation Officer, Frank Ceja of an Settlement Agreement, which included Waiver of Restitution in Case 2018-cv-000160, Defamation against Gallas and O'Connell.

135) The very next day Alexander was served warrant for VOP for non-payment of restitution, and ASA Theodore Roodhof was assigned as it would have been a conflict of interest for Bingham since being named Defendant in matter of 2018-cv-000721MX.

136) Alexander alleges the VOP for non-payment of fees, or restitution, is not considered a violation, in accordance with FS 948.06 and FS 901.02, Probation "crimes".

Alexander also located an email from Gallas' attorney, Andrew Sholtes, containing the same information, as the Waiver of Restitution. provided to ASA Theodore Roodhof.

137) Alexander alleges that Roodhof continued to prosecute her for VOP while knowing the evidence that would "negate her guilt"; considered exculpatory, as Brady Material.

138) Alexander alleges that the named ASA Bingham, Denton, and Roodhof failed. to investigate further, and when the evidence noted as a "7minute" video and a Settlement Agreement were identified as Brady material, the ASA office had a "Prosecutorial duty" which is not covered by absolute or qualified immunity, to disclose to the court evidence that would "negate the guilt" and failed to do so.

\Prosecutors have a duty under ABA and Florida Bar Ethics to obtain any evidence and disclose (Rule 3.8, Prosecutorial Duties) as Brady material is considered exculpatory.

139) Alexander alleges ASA Bingham, Denton, and Roodhof demonstrated malice when they continued to charge her with crimes and VOP's, while allowing Gallas to continue to lie, and perpetuate a fraud upon the court. In a statement provided the Plaintiff in September 2018, as part of settlement, Gallas identified the "7 minute" video. Assistant State Attorneys had a prosecutorial "duty" but demonstrated willful and wanton disregard for Plaintiff's rights, while knowingly violating her rights under Brady Law.

**As it pertains to the Martin County Sheriff and Deputies "under the color of law":**

140) Alexander was arrested based on claims by Gallas and O'Connell on February 27, 2015 , and served 3 days in Martin County Jail on March 11, -March 15, 2015, without incident.

141) Alexander alleges Gallas and OConnell reported falsely to Stuart Police and the Police failed to investigate her claim of Domestic Violence, and she was wrongly charged, which subjected her "labeling" by the police.

142) Alexander alleges she was arrested on March 28, 2015, from another false claim by Gallas of "forging" a personal check, written by Gallas on February 11, 2015 for Alexander's birthday, Iphone, and Ipad. She was booked and released on Bond.

143) Alexander alleges on April 13, 2015, when she called Stuart Police for assistance, she was arrested without warrant and charged for 9-1-1 misuse. Bond was revoked as this made for a subsequent arrest..

144) Alexander alleges on her first day in Martin County Jail, an Officer Christie admonished her for watching church on TV, when another inmate complained,

and then instructed Alexander to turn change the channel/ turn the TV off. and when she attempt such, Christie ordered her to get her things and "You're going to  Solitary". Deputies demonstrated wanton and willful disregard for Alexander's mental health.

145) Alexander alleges Officer Randolph was in charge and when she ask to file a grievance, it was denied.   Grievances are treated as a matter of Due Process.

146) Alexander alleges that other deputies continued to deny her phone privileges, recreation, and other privileges that other inmates were entitled to.

147) Alexander attempted to return to "community" by requesting Mental health evaluations and she was denied.  Denial of her requests were Due process violations.

148)  Alexander alleges while in Solitary she was denied undergarments, hygiene products and not made aware of Policy for acquiring such.  In addition, when she made requests for phone, recreation, or pencil and paper, she was ranted at by deputies and treated harshly, while being accused of being disrespectful.  On several occasions she was referred to as "Bitch" by Deputy Roberts.   When Randolph was made aware of Alexander's complaints she denied filing grievances.

149) Alexander alleges she was held in solitary confinement for a total of 40 days, until she was released by Plea Agreement, on May 21, 2015.   Alexander has since discovered Model Jail Standards as it relates to limits in solitary confinement, that of 30 days.

150)  Alexander alleges due to the harsh and inhumane treatment while in confinement her mental condition declined, as diagnosed PTSD, Anxiety disorder and Depression, and it was said that she was "crazy" by deputies. (8th Amendment Right to be free from Inhumane treatment)

151) Alexander was rearrested 3 subsequent times, due to claims of violations of Probation, by former Domestic partner, Gallas, and on every occasion she was placed back in Solitary confinement. even when she reported other inmates for threatening her and stealing from her.  Alexander alleges she was labeled and targeted unnecessarily and punished repeatedly. Alexander was placed in confinement without probable cause and denied Due process by evidentiary hearing or allowed to file grievance.

152) On August 3, 2019, Alexander was taken into custody in Wilson County TN, and extradited to Martin County Jail on VOP though her probation was to expire on May 2,1 2019.  Alexander alleges on her arrival she was greeted by Officer Westbrooke while going to 1st appearance hearing. Alexander was disoriented from being on an extradition van without food and water for extended periods.  While on her way to 1st appearance, Westbrooke instructed Alexander to "open the damn door" and "you know where you are you've been here before", then threatening to put Alexander in Solitary confinement for misidentifying the door to the stairwell.  Westbrooke further identified Alexander and her lawsuit against the Sheriff and other deputies.

153) Alexander was incarcerated from August 23, - December 6, 2019 and during that time was verbally assaulted by a number of deputies with name calling, "Bitch" and using the F- word to reference her.

154) Alexander alleges was isolated in her cell numerous times, by Officers Lymon, Westbrooke, and Ewell(Petrocci?) as being accused of stealing a cup, calling an inmate "monkey" and other accusations or minor infractions.  On all occasions, Alexander was denied hearing and grievance procedures.  Alexander was not allowed her "contact" card

when she asked to see it.  Alexander was denied being moved to the "God pod" though she had previously participated in a program sponsored by the same organization, claiming she was a "trouble-maker".

155) Alexander alleges it was well-known amongst all deputies and many in the inmate community that she was acting pro se in her own  and she was denied access to the law library and writing utensils and paper and postage which impeded her defense.

156)  Alexander alleges while in Martin County Jail, August -December 2019,  she wrote Settlement letters to the Defendants, City of Stuart to the attention of Michael Mortell, Sheriff Snyder, and the Assistant State Attorneys, and received no response or acknowledgement of receipt, though one was requested.  Defendant filed Motions to Dismiss with respect to Plaintiff's Amended Complaint and they were granted.

157)  Alexander alleges the repeated exposure to Solitary confinement and the threat of being placed back in Solitary confinement, demonstrated Depraved Indifference and Inhumane treatment which qualifies for a violation of her 8th Amendment rights.

158) Alexander alleges the repeated to Solitary confinement impeded her defense as privileges of the regular community, that of paper and pencil, copying and mailing documents, and phone calls to her attorney, were denied while in Solitary confinement. attorney were withheld, and violated her 6th Amendment rights to timely defense.

159)  Alexander alleges the actions of the deputies named and those unnamed(due to lack of memory brought about by PTSD) contributed to the Demise of her mental health and was considered harsh and inhumane, and severe and Outrageous at times.

Alexander alleges Deputies Westbrooke, Christie, Lymon, Roberts, Ewell, and Randolph in her supervisory capacity demonstrated Depraved Indifference to her at MCJ,

while knowingly violating Plaintiff's right to Due Process and Humane Treatment.

**As it pertains to Florida Department of Corrections, and Officers Hill, and Ceja under the supervision of Joseph Cracchiola and others unnamed.**

160)  Alexander alleges she agreed to a 3-year probationary period on or about May 21, 2015, after entering into a Plea Agreement with ASA Kaitlyn Bingham.

161)  Alexander reported to meet with her Probation Officer Robin Hill, that afternoon or the next day and was apprised of the conditions of her Probation, and reporting.

162) Alexander alleges Hill called on or about June 6, 2015, in regards to a "butt-dialed" phone call, as reported by Dennis Gallas, acclaimed victim.  Alexander attempted to explain the mistaken call to Hill, but was told to report to court the next day, without offering counseling or Alternative Sanctions 948.06(f). The phone call was not "willful" or "substantial" as ascribed in the FS statute. Hill established a practice or custom of arresting Alexander for minor infractions that qualified for Alternative sanctions, while knowing it violated Alexander's right to Due Process.

163) Alexander alleges she was arrested in court without any offer of "Alternative Sanction", as community service, as ascribed by FS 948.06. It was Alexander's first violation, and could not be said to be "Willful or substantial".

164) Alexander alleges she was again accused by Dennis Gallas, former domestic partner of contact through an email on his website. The party was identified as Jennifer Gamble, and in Hill's affidavit, it claimed the IP addresses were a "match" to Alexander Iphone, though it was later discovered that they did not "match."   Alexander was arrested on April 4, 2016 and spent 70 days in jail before being released ROR.  ASA Bingham continued to prosecute while knowing the IP addresses "did not match", and that the evidence "negated her guilt", as Brady Material.

165) Alexander alleges in both cases of VOP, she was entitled to an Alternative Sanction, that of community service, as she was a non-violent offender and met the criteria for such, but instead was arrested and incarcerated for extended periods of time.

166) In the last case, in hearing, Alexander agreed to terms to avoid trial and more jail time, as the following 1-year extension of Probation (May 21, 2019) and Restitution of $2000.00 to Gallas(Investigative costs) and other stipulations of no-contact. Officer Hill consistently warranted

Alexander for "contact" violations based solely on claims by Gallas, and resulted in "jail time" for Alexander, though she qualified for alternative punishment.

167) Alexander alleges she brought civil suit against Dennis Gallas and Joyce O'Connell for Defamation per se, and in July 2018, was offered settlement by Gallas of Waiving the Restitution, $2000.00 by counsel Jean Laws-Scott, as full settlement. Alexander declined.

168) Alexander alleges in September of 2018, Dennis and Lisa Gallas, initiated Settlement Discussions acting Pro se, and when contacted Alexander sought clearance through Probation, by and through Supervisor Joseph Cracchiola. to proceed with Settlement discussions, Alexander was then instructed by the court, Judge Bronis, to contact only through email and proceeded to follow instructions.

169) Alexander alleges that Lisa Gallas called Alexander to discuss settlement and when she didn't approve of the direction it was going, Gallas reported Alexander to probation for another VOP, in September of 2018.  The state denied to prosecute stating it was a "civil matter".  Alexander alleges Gallas' initiated Settlement discussions with Malicious intentions to make another claim of VOP, as he had previously.

170) Alexander moved to Nashville, TN area in Fall of 2016 and transferred supervision to TN Department of Corrections, Officer Jones. From then until Fall of 2018, Alexander went without incident as reporting monthly and drug testing and given several travel waivers to visit family members.

171) In May of 2019, when approaching termination of probation, Alexander contacted Joseph Cracchiola and was told her new probation officer was Frank Ceja. Alexander alleges she contacted Ceja to apprise him of the Settlement Agreement with Gallas' finalized on February 18, 2019, in which $2000.00 restitution was to be waived. Gallas submitted a letter that was to be signed and sent to the ASA Bingham to submit to the court for approval. Ceja claimed he was unaware of any such restitution.

172) On May 8, 2019, Officer Ceja charged Alexander with a VOP for non-payment of restitution and submitted to the court for warrant to be served. The court tolled Alexander's probation. Alexander alleges Ceja actions were not in accordance with F.S. 948.06 and 901.02, as non-payment of restitution does not qualify as a "crime" and is not punishable as a VOP. Ceja's actions demonstrated reckless disregard for Alexander's civil rights to Due process and caused the termination of her probation to be postponed pending hearing, July 16, 2019.

173) Alexander alleges she notified Joseph Cracchiola of her concerns and there was no further investigation conducted to determine the correctness of Ceja's actions. Alexander alleges the Statute is clear, that all of her violations were non-criminal and as such qualified for "alternative sanctions" but was not given such consideration.

174) Alexander alleges by the tolling of her probation, it predisposed her to any future claims or encounters with law enforcement that would cause a technical violation, as

would be the case in her divorce hearing on July 10, 2019.

175) Alexander alleges but for the wanton and willful disregard for her rights to a hearing before the VOP was charged , Probation would have terminated on May 21, 2019. Alexander alleges due to the lack of due diligence and wrongful charge of VOP she was subjected to another arrest on August 3, 2019 and extradited to Martin County Jail.  The punishment far exceeded the offense and was severe and inhumane. Alexander alleges the actions of Officer's Hill and Ceja demonstrated a customary practice that denied her rights to due process as an evidentiary hearing should have preceded any of her arrests, to establish whether there was even evidence of the offense and not just based on heresay of Dennis Gallas, former domestic partner. FS 948.06(1)(a)

176) Alexander alleges when she reported her concerns to Hill's supervisor, Officer Durine-Filicetti, she failed to investigate her claims that Hill was being malicious and seemed to have a more than friendly, unprofessional relationship with Gallas.

177) Alexander alleges when she reported her concerns with Hill and Cejas supervisor, Officer Joseph Crachiola, he failed to instruct Ceja, when Alexander reported the Restitution as a part of Settlement Agreement that was not an offense considered punishable by warrant under the Statute as it was not a "crime". FS 948.06(1)(a)

178) Alexander alleges Dennis Gallas settled a civil action founded in Defamation per se and made admissions that a "7minute" video was not turned in to law enforcement, and as such Alexander alleges this Brady material could have "negated her guilt." (Brady Law) Dennis Gallas' VOP claims of November 1, 2016, were founded in lies that were documented in Alexander's complaint for Defamation.   Defamation claims are based on false statements of fact and Alexander demonstrated that Gallas and his wife had lied to

law enforcement and had lied to Probation Officer Hill about emails sent to his website.
Alexander was wrongfully charged with a VOP on November 1, 2016, based on this
email, from Jennifer Gamble and false claims by Gallas.   Officer Hill swore in affidavit
that the IP addresses were a "match" when in fact they were not.   Alexander alleges these
claims subjected her to unfounded claims, wrongful prosecution, and ultimately jail time..
Alexander alleges there were grounds to arrest Gallas for filing false reports to law
enforcement and bias against her was consistently demonstrated by Officers with the
Department of Corrections.   This form of bias is founded in violations of her 8th
Amendment, "cruel and unusual"   and 14th Amendment rights to Equal Protection
Clause.

179)   Alexander alleges her arrests and subsequent periods of incarceration were
excessive in relation to the offense and constituted, severe and inhumane treatment, as FS
948.06 and 948, 03(1)(f) supports an alternative sanction for minor technical violations,
such as "butt dialed" phone contact and an email that was not from Alexander.

180) Alexander alleges she was not provided with the opportunity for evidentiary hearing
prior to the VOP charge, which potentially would have "negated her guilt". She was
instead charged, arrested and incarcerated, which left her at a grave disadvantage to
defend herself.  Being incarcerated by nature,  impeded Alexander ability to procure
counsel and subjected her to the lengthy process of pretrial hearings and potential of
taking plea agreement while under duress. This constitutes a 6th Amendment violation.

181) **<u>RELATION BACK</u>**

State Rules 1.190(c) Amended Pleadings and application to Federal Rule 15(c)(1)(C)

as it pertains to RELATING BACK to the initial event.

"Plaintiff nevertheless cites *Krupski v. Costa Crociere S. p. A.*, asserting that "relation

back under <u>Rule 15(c)(1)(C)</u> depends on what the ***party to be added knew or should have***

***known*** , not on the amending party's knowledge or timeliness in seeking to amend the

pleading."" *Lelieve v. Orosa*, CASE NO. 10-23677-CIV-ALTONAGA/Simonton, 7 (S.D.

Fla. Oct. 27, 2011)

**CAUSE(S) OF ACTION AS COUNTS 1-8**

**<u>FIRST CAUSE OF ACTION</u>**
**RIGHT TO FREEDOM OF SPEECH,, AND EXPRESSION 42 U.S.C. § 1983 -**
**FIRST AMENDMENT**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as

though fully set forth herein.

**As it pertains to the City of Stuart, Police officers and agents**: (Paragraphs 10 -118)

182) Defendants as Officer Vo, Cernuto, Heitfelt, and Gerwan under the "color of law"

and as agents of the City of Stuart, Police Department, violated Plaintiff's First

Amendment Rights by arresting her under the false pretext and when she complained to

Supervisors.   These unlawful actions were done with the specific intent to deprive

Plaintiff of her constitutional rights to Freedom of Speech and when she exercised that

right,  they "shot the messenger", rather than investigating the matter further in

accordance with Policy and Procedure, 27, and 28 and Florida Statute 741.28.

183) Defendant's and their employer when notified of such, continued to "cover up" the wrong doings of Gallas, with malice while demonstrating Gender bias, with the specific intent to deprive Plaintiff of her constitutional rights to Freedom of Speech.

184) Plaintiff is informed and believes that the acts of the Defendants were intentional in failing to protect and preserve by failing to take her sworn statements timely, acquire the evidence as "7 minute" video and arresting her with pretext to "shut her up" arose to Depraved Indifference and Intentional Infliction of Emotional Distress.

At all times relevant herein, Defendants Cernuto, Gerwan, Ortado, Buchanan, and Dyess were in supervisory positions of Defendant Vo, and charged with the responsibility to apply policy, procedure, and train officers when complaints arose that addressed the deficiencies in policy or non-compliance with Policy and Statute.

185) Defendants Sergeant(s) Cernuto, Gerwan, Ortado, Buchanan, and Chief Dyess, Acts and Omissions were so culpable, as to constitute authorization of, and acquiescence in, the unlawful conduct of Defendant Vo as Tampering with Evidence, False reporting to supervisors and condoned his behavior. As to Gallas, Tampering with Evidence, False Police Reports, Battery, and False Imprisonment, and Perjury, in accordance with FS statute, the officers failed to further investigate Alexander's claims timely. Gallas' unlawful conduct and Vo's participation in such, arose to Conspiracy. (FS 777.04(3)

186) Defendants Sergeant(s) Cernuto, Gerwan, Ortado, Buchanan, and Chief Dyess, in their supervisory capacity are vicariously liable for the unlawful acts of Defendant Vo and Heitfelt involved in Alexander's arrests and claims of excessive force.

187) The Defendants, as employees of the City of Stuart and Stuart Police, aforementioned, omissions constituted a Custom, Practice, and Policy of Deliberate and

Depraved indifference to Plaintiff's constitutional rights secured by the First Amendment.

5th, 8th and 14th Amendments.

188)  Defendant, City Attorney, Michael Mortell, orchestrated the proceedings for a

SIRB as an Administrative remedy and when Alexander asserted her rights

under ADA to a reasonable accommodation, he denied and cancelled the hearing.

This hearing would have made known the actions of the Defendants in their official

capacities as in violation of Policy and Procedure, and FS Statute. Cancellation of the

hearing gave rise to Civil rights violations as it was public forum hearing. Mortell's

demand of a letter for him to read, constitutes **censorship** and abridged Alexander's 1st

Amendment rights to Freedom of Speech.

189)  Defendant, Police Chief Dyess was "in line" for promotion to City Manager at the

time of Alexander's reports of Police Misconduct, and Mortell "buried" the complaint, to

prevent the exposure of Dyess' inclination to "turn a blind eye" when reports of police

misconduct were filed.   Mortell's actions were intentional and demonstrated Malice.

190) Defendants Sergeant(s) Cernuto, Gerwan, Ortado, Buchanan, and Chief Dyess, Roz

Johnson and Michael Mortell acts were intentional, malicious, willful, wanton, obdurate,

and in gross and reckless disregard of the Plaintiff's Constitutional rights.

191) As a direct and Proximate consequence of Defendants unlawful acts, Plaintiff has

suffered and continued to suffer financial losses as actual damages, past, present and

future earnings, loss of personal property, loss of employability, loss of reputation, public

humiliation, and emotional pain and suffering and loss of familial relations.

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**As it pertains to Defendant(s) Martin County Sheriff and Deputies Christie and Randolph, Westbrooke, Roberts, and Lymon and any unnamed deputies. (Paragraphs 143-159)**

192) Defendants Christie and Randolph prevented Alexander from her Freedom of Speech and Freedom of Religious Practice while incarcerated at Martin County Jail and intentionally confined her to Solitary confinement for the expression of such in violation of her First Amendment rights.

193) Defendant's and their employer when notified of such continued to confine Alexander and restrict her from privileges and rights which impeded her Defense. This treatment of a prisoner is protected as "cruel and unusual" and grossly disproportionate to the severity of the "crime", and is a violation of her 8th Amendment Rights., as Alexander had not committed any "offense" when placed in Solitary.

194) Plaintiff is informed and believes that the acts of the Defendants were intentional in failing to protect and preserve by failing to comply with Local, State and Federal standards( As MODEL JAIL STANDARDS) to prevent further harm or injury, identified as Intentional Infliction of Emotional distress. The standard for confinement is 30 days and Plaintiff was confined for 40 days without Due Process under Grievance procedures. Model Jail Standards 3.2(d). The actions were "cruel and unusual" and grossly disproportionate.

195) Defendant's actions were malicious as they had a standard of practice and failed to comply with such, while preventing the Plaintiff from access to the "outside world"

and Due process.   The deputy's actions demonstrated Depraved Indifference which caused Intentional Infliction of Emotional Distress while knowing Alexander had a previous history of PTSD, Anxiety and Depression and it was exacerbated by the confinement and harsh treatment by Deputies while confined.

196) As a direct and Proximate consequence of these unlawful acts, Plaintiff has suffered and continued to suffer financial losses as actual damages, loss of personal property, loss of employability, loss of reputation in her community, public humiliation, and emotional pain and suffering and loss of familial relations.

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**As to the Defendant's Assistant State Attorney Kaitlyn Bingham, Nita Denton, and Theodore Roodhof under the direction of Bruce Colton  (Paragraphs 118-142)**

197)  Plaintiff realleges that Defendants Bingham, Denton, and Roodhof acted with Depraved Indifference when she notified them of additional evidence and her claim of battery against Dennis Gallas.  They failed to investigate further as a Brady claim, but instead Alexander was prosecuted numerous times for VOP's without substantial evidence, and based on claims from Gallas.  The last VOP, prosecuted by Roodhof for Non-payment of restitution was not supported by FL statute and when Alexander notified Roodhof in email he continued to prosecute. (FS 948.06, FS 901.02, Crimes)

198) Defendants Bingham, Denton, and Roofhof unlawful actions were done with the specific intent to deprive Plaintiff of her constitutional rights to Freedom of Speech and when she exercised that right, they "shot the messenger", rather than investigating the matter further in accordance with Policy and Procedure and Statute, which lead to a violation of Plaintiff's due process rights and Equal Protection under 14th Amendment.

52

199) Plaintiff is informed and believes the acts of the Defendants were intentional in failing to protect and preserve by failing to take her sworn statements timely, acquire the evidence as "7 minute" video and arresting her with pretext to "shut her up" arose to Depraved Indifference and Intentional Infliction of Emotional Distress.

As a direct and Proximate consequence of these unlawful acts, Plaintiff has suffered and continued to suffer financial losses as actual damages, loss of personal property, loss of employability, loss of reputation in her community, public humiliation, and emotional pain and suffering and loss of familial relations.

### SECOND CAUSE OF ACTION

**RIGHT TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS AND EFFECTS, AGAINST UNREASONABLE SEARCHES AND SEIZURES. 42 U.S.C. 1983 ART. I §7. 4TH AMENDEDMENT**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein. (Paragraphs 18- 118)

200) Defendant, Stuart Police, their employees, and agents, owed the Plaintiff a Duty of Care, under the 4th Amendment to the U.S. Constitution and Article 1 of the Florida Constitution to protect the safety of the Plaintiff against unreasonable searches and seizures. The Defendant's as officers of the Stuart Police "seized" Alexander from her home on a number of occasions which gave rise to wrongful arrests preventing her from obtaining counsel timely which also impeded her defense. (Paragraphs 18- 118)

201) Defendants, Stuart Police used Excessive force and demonstrated Outrageous conduct with Depraved indifference on more than one occasion, albeit March 11, 2015(Vo, Heitfelt, Osinga, Cernuto), March 28, 2015(Pope), and April 13, 2015 (Gerwan

and Vo) which established a custom, practice and policy of disregard for the Plaintiff's rights to Due process, as these arrests occurred without warrant and with pretext.

202) Defendants, were aware of their conduct "under the color of law" and intent to arrest, but failed to apprise the Plaintiff of her rights to counsel, as Miranda Rights. Defendant's actions are noted on BWC's which were not operated in accordance with Stuart PD Policy 53, as the recordings were stopped and started numerous times.

203) The Defendants, as Stuart police officers, failed to present a warrant before arrest and conducting any form of search of the Plaintiff's body or premises.   In all cases of arrests,  the Officers had notice and could have acquired the appropriate warrant to serve upon arrest.

204) As a direct and Proximate consequence of these unlawful acts, Plaintiff has suffered and continued to suffer financial losses as actual damages,  loss of personal property, loss of employability, loss of reputation in her community, public humiliation, and emotional pain and suffering and loss of familial relations.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS: 42 U.S.C. § 1983, FOURTEENTH AMENDMENT
### STATE CREATED DANGER

Plaintiff realleges  and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**As is pertains to Police Officers with the City of Stuart:   (Paragraph 18 -118)**

205) By using "SWAT team" tactics when unnecessary, while making arrests on March 11, and April 13, 2015, the Defendants created a danger for Plaintiff by demonstrating Depraved Indifference while knowing her emotional state (as previously diagnosed PTSD) which qualifies as Intentional Infliction of Emotional Distress.  The Plaintiff

was provoked into medical emergency that did not exist prior to the officers actions,

as she was told earlier that day there was no police reports or warrants for her arrest.

206) As it pertains to City Adminstrators, Roz Johnson and Michael Mortell, and their

actions on July 25, 2019, while Alexander was requesting public records, and her

process server present to serve the Defendant City of Stuart.   Their actions were that of

intimidation and retaliation.

207)   As a direct and proximate consequence of the acts of the Stuart Police and City of

Stuart agents, when told of these actions, Plaintiff has suffered and continues to suffer

actual and potential injury to her health and safety and is entitled to compensatory

damages for injury to her person.  City of Stuart actions were Malicious.

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as

though fully set forth herein.

**As it pertains to the Martin County Sheriff and officers thereof: (Para. 143-159)**

208) Defendants, Christie and Randolph, subjected the plaintiff to an extended period of

solitary confinement (that of 40 days) later shorter intervals of confinement, it

demonstrated Depraved Indifference for the Plaintiff's emotional and physical well-being,

while denying her the same access to privileges and legal aid which impeded her defense.

Their actions arise to Intentional Infliction of Emotional Distress. (FL Model Jail

Standards 3.2(c) and (d) and knowingly violated the Plaintiff's civil rights to counsel.

209) In addition to the confinement, the Deputies actions of ranting, demeaning and

abusive language toward the Plaintiff in the presence of other inmates demonstrated

Depraved Indifference arising to Intentional Infliction of Emotional Distress, 3.2 (c)&(d)

The officers actions were Outrageous and Malicious toward Alexander as she was

"singled-out" for bringing a Federal suit against the Sheriff and named Deputies, Christie and Randolph in 2019.   These events were proximal to serving the Sheriff in July 2019.

210) As a direct and proximate consequence of the acts of the  Martin County Sheriff and Jail Deputies, when told of these actions through grievance procedures, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for injury to her person and Punitive damages.

**As it pertains to Defendants Assistant State Attorney:  (Paragraphs 118-142)**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

211) The Defendants, Bingham and Roodhof continued to prosecute while knowing their "Duty to disclose" any evidence brought to their attention as "Brady material" and exculpatory in nature, that would tend to "Negate the guilt" of the Plaintiff.   The furtherance of the prosecution while knowing the likelihood of a different outcome given the new evidence, demonstrated Depraved Indifference and as the Plaintiff was incarcerated during these periods, the STATE created a danger to her Mental and physical health.

212) The Defendants continued to threaten the Plaintiff with more jail time, rather than submit a formidable "Alternative Sanction"( community service) for VOP's which were not "crimes". (FS 948.06)   The Defendants established a custom and practice in the treatment of Alexander that wax severe and inhumane, and Intentional Infliction of Emotional Distress.   These rights were secured under F.S. 948.06 and 901.02, and as such Plaintiff was exposed to Solitary confinement and made decisions to Plea under the Duress of her confinements.

213)  As a direct and proximate consequence of the acts of the  Assistant State Attorneys,

Plaintiff has suffered and continues to suffer actual and potential injury to her health and

safety and are entitled to compensatory damages for injury to her person.

Plaintiff alleges the actions of ASA Bingham and Roodhof were retaliation for Plaintiff

filing Complaint of Civil Rights violations(served July 2019) and done with Malice

**As it pertains to FL Depart. of Corrections and its officers: (Paragraph 160 - 180)**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as

though fully set forth herein.

214)  The Defendants, while knowing the F.S. provided for alternative disciplinary

measures under 948.03(1)(f) and 901.02, continued to arrest and incarcerate, the Plaintiff

for accusations made by her former Domestic Partner, Dennis Gallas for minor

infractions, that qualified for Alternative Sanctions, and not "crimes" as qualified by the

statute.  The subsequent incarcerations posed a real and perceived danger to the Plaintiff,

as she was subjected to solitary confinement while incarcerated.  Plaintiff had agreed to

attend Mental Health court as a stipulation to Probation, It was well-known that she

suffered from PTSD, Depression and  GAD.

215) The Defendants were apprised of Plaintiff's claims that Gallas, her former domestic

partner had Battered her and was continuing to make false claims to prevent her

from pursuing prosecution against him.  This imposed an additional danger of

continued claims of VOP from the ex-domestic partner and extensions to her

probation. Originally Plaintiff's probation was to terminate on May 21, 2018.

219) The Plaintiff **voluntarily** apprised Officer Ceja, (new to her as Probationer officer),

of the Restitution waiver, and this unnecessarily subjected her to the danger of

a VOP, though it was unsupported by Statute. The domino effect of her report caused

her to be incarcerated for an additional 4 months. The acts and omissions of Officer Ceja

constituted a violation of the Plaintiff's Civil Right to Due Process.

220) As a direct and proximate consequence of the acts of the Department of Corrections,

agents and officers, Plaintiff has suffered and continues to suffer actual and potential

injury to her health and safety and is entitled to compensatory damages for injury to her

person. The actions of Officer Hill were culpable, wanton and willful, and malicious.

221) Defendant, Cracchiola was vicariously liable and informed of the unlawful acts of

Defendants Hill and Ceja, and the actions of Gallas of false reporting.

### FOURTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS: INTERFERENCE BY THREAT, INTIMIDATION OR COERCION FLORIDA STATUTE TITLE XLIV

F.S. 760.37 Interference, coercion, or intimidation; enforcement by administrative or civil action.—It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37. This section may be enforced by appropriate administrative or civil action.

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**As it pertains to the Defendants Stuart Police and City of Stuart, officers and agents: (Paragraphs 18-118)**

**222)** Defendants use of excessive force and intimidation was demonstrated when she

reported Vo for "not doing his job" by using "SWAT team" tactics to intimidate the

Plaintiff, and ultimately arresting her.

223) Defendants knowingly interfered with Plaintiff execution of her rights to Freedom

of Speech and Due Process by interfering with her rights by using SWAT team tactics to

arrest her rather than serving a "friendly" warrant during daylight hours.

224) Defendant's agents and employees have used arrests, threats of arrests and intimidation to interfere with the Plaintiffs rights to Public records from the point of her reports in March of 2015 to July of 2019

225) Plaintiff Alexander realleges Johnson's and. Mortell's actions on July 25, 2019 were consistent with retaliation and intimidation for her filing and serving of the Federal Complaint.

226) Plaintiff is entitled to injunctive relief and damages as a proximal result of the City claiming she created a "disturbance" while at City Hall requesting public records, further prohibiting the City from future restricting the Plaintiff of records and free from intimidation.   Proximal to these events, on August 3, 2019 Alexander was arrested.

227) Defendant's agent Mr. Mortell, as the City Attorney, has continued to email Alexander beginning January 2021, when she let it be known that she was requesting public records to potentially reopen her Case.

228) Defendant, Mortell has attempted to dissuade through intimidation and coercion, by telling Alexander she had "no cause of action" against the City of Stuart and it's agents. Mortell has accused Alexander of having "persecutorial delusional disorder", meaning she "sees and hears" things that are not true, by claiming there was not law enforcement called to City Hall on July 25, 2019.  The week of March 5, 2019, Mortell threatened that if Alexander continued to pursue him as a Defendant he would "seek Sanctions".  Defendant Mortell's threatening behavior was meant to interfere with the Plaintiffs's rights to represent herself pro se in this matter.

59

229) Alexander requests injunctive relief to prohibit the Defendants named as City of Stuart, and any of it's agents from contacting her and attempting to intimidate her and all contact be by and through counsel of record by email.

230) Alexander realleges the Defendant's actions were Malicious and in retaliation, and as such Punitive damages are invoked.

**As it pertains to Defendants Martin County Sheriff and Deputies:**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein. ( Paragraphs 143-159)

231) Defendants did consistently used means of intimidation, and threats of Solitary confinement as a means to prevent the Plaintiff from executing her rights to Freedom of Religion and Speech, and self-representation as she was acting pro se in a Civil matter whereby they were named Defendants. (1st and 6th Amendments) Plaintiff is entitled to Damages, and as the Defendants action were malicious and in retaliation, Punitive damages are invoked.

**As it pertains to ASA Bingham and Roodhof: (Paragraphs 118-139)**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

232) Defendants have consistently used means of intimidation and coercion to invoke a Plea from the Plaintiff while knowing the evidence in their possession and evidence they were apprised of, as **Brady material**, was exculpatory in nature. The Prosecution continued to detain in Martin County Jail Plaintiff under the auspices of VOP's that were not considered "crimes" under the provisions of Florida Statute, as they were technical violations (albeit, non-payment of restitution, Mobley v. State, 2017)

233) Defendant's agents and employees have continued to use arrests, threats of incarceration, and intimidation to interfere with Plaintiffs rights to report the suspicion of crimes by former Domestic Partner, Dennis Gallas, and when such was reported followed it with subsequent claims of VOP and arrests.  The exercise of Plaintiffs rights are secured by the Constitution of the U.S., the Constitution of the State of Florida and the Statutory laws of the State of Florida (especially F.S. 741.29, *Duty of the Prosecution*.)

234) Plaintiff is entitled to an injunction pursuant to Florida Civil Code, and Federal Rules of Procedure, Injunctive Relief, prohibiting the Defendants from arresting detaining or other interfering with her rights to proceed pro se in this legal actions, as it pertains to her 6th Amendment Right to Self-Representation.  Plaintiff is also entitled to damages pursuant to any arrests, threat of arrests, and intimidation.

Plaintiff is entitled to Damages, and as the Defendants action were malicious and in retaliation to her filing a state and Federal Complaint. Punitive damages are invoked.

## FIFTH CAUSE OF ACTION
### 8TH AMENDMENT VIOLATION as it subscribes to criminal punishment, and punishment grossly disproportionate to the severity of crime.

Plaintiff realleges  and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**As it pertains to the City of Stuart and Officer Vo, and Chief Dyess: (Para. 18-118)**

235) On information and belief, Chief Dyess' attitude was so culpable as to constitute authorization of, and acquiescence in, the unlawful conduct of Defendant Vo as Tampering with Evidence, False reporting to supervisors and encouraged his behavior. When Vo arrested Alexander again, for "Misuse of 9-1-1", rather than serve a warning citation, in accordance with customary policy for misdemeanor infractions, Alexander was arrested, and dragged to the Police cruiser, demonstrating wanton and willful malice.

This arrest predisposed Alexander to an extended confinement which when the totality of circumstances is considered, was far severe and grossly disproportionate to severity of crime. F.S. 365.172(13) when a citation would have been more appropriate. The arrest was done with deliberate indifference, Malice and Reckless Disregard for Alexander' Due Process as her bond was revoked for repeat offenses, which impeded her defense in all charges.

236) Defendants Dyess, Cernuto, Heitfelt, Gerwan, and Vo acts and omissions constituted a custom, practice, and policy of deliberate indifference to Plaintiff's constitutional rights secured by the 8th Amendment in regards to cruel and unusual punishments inflicted as it pertains to a custom, practice and policy of arresting the Plaintiff.

237) Defendants Dyess, Cernuto, Ortado, and Gerwan in their supervisory capacity are vicariously liable for the unlawful acts of Vo and Heitfelt in the arrest of the Plaintiff.

**As it pertains to the Martin County Sheriff and officers thereof: Para. 143-159**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**238)** Defendants Christie and Randolph, by confining the plaintiff to an extended period of solitary confinement (that of 40 days) then later shorter intervals of confinement, demonstrated a practice, and custom of Deliberate Indifference for Plaintiff's Equal Protection Clause of the 14th Amendment while denying her access to privileges and legal aid which impeded her defense. Their actions arise to Intentional Infliction of Emotional Distress. (FL Model Jail Standards 3.2(c) and (d).

239) Defendants Westbrook, Lymon, Ewell, and Randolph, in addition to the confinement, the deputies actions of ranting, demeaning and abusive language toward the

Plaintiff in the presence of other inmates demonstrated Depraved Indifference arising to Intentional Infliction of Emotional Distress. 3.2 (c)and (d).  The officers actions were Outrageous and Malicious toward Alexander as she was "singled-out" for bringing a Federal suit against the Sheriff and named Deputies, Christie and Randolph in 2019. These events were all proximal to serving the Sheriff in July 2019,

240) As a direct and proximal consequence of the acts of the  Martin County Sheriff and Jail Deputies, when told of these actions through grievance procedures, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for injury to her person.  The officers actions were in retaliation and with malice and invoke Punitive damages.

**As it pertains to the FL DOC, Officers Hill and Ceja and supervisor Cracchiola:**

Plaintiff realleges  and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.  (Paragraphs 160-180)

241) Defendants charged Alexander with Violations of Probations, which did not meet the criteria of a Qualifying offense under FS 948.06(6)(c)(1-18),  and as such she was "criminalized" for non-criminal acts.  Defendants had the option of an "alternative sanctioning" program, and Alexander was not afforded that alternative.

242) At all times relevant herein, Defendants Cracchiola,  Hill and Ceja, were agents of the Department of Corrections and acting under the "color of law" in their officially capacity.   Defendant Cracchiola, is vicariously liable, for the unlawful acts of Defendant Hill, and Ceja.

243) Defendants Cracchiola, Hill, and Ceja, acts and omissions constituted a custom, practice, and policy of deliberate indifference to the Plaintiffs' constitutional rights secured under 8th Amendment as it pertains to severe and inhumane treatment, and the

Equal Protection Clause of the 14th Amendment

## 6TH CAUSE OF ACTION
## VIOLATIONS OF RIGHTS SECURE BY THE EQUAL PROTECTION CLAUSE
## OF THE FOURTEENTH AMENDMENT

(42 U.S.C. § 1983  DEFENDANTS DYESS, MORTELL and JOHNSON, policy makers AND Supervisors BUCHANAN, CERNUTO, GERWAN, AND ORTADO)

244) Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

245) At all times relevant herein, Defendants Dyess, Johnson and Mortell were the policy makers for the City of Stuart, and Stuart Police.

246)  At all times relevant herein, Defendants Buchanan, Cernuto, Gerwan, Ortado, and Dyess, were supervisors to Officer Vo.

247)  The acts and omissions of Defendants Dyess, Mortell, Johnson, Buchanan, Cernuto, Gerwan, and Ortado, were so culpable as to constitute authorization of and acquiescence in, the unlawful conduct of Defendant Vo and Heitfelt.

248) Plaintiff  realleges that Chief Dyess' comments, that she was a "vengeful woman", was gender-based and demonstrated a pervasive attitude as senior supervisor of the Police department,  acquiescing or condoning violations of "Equal Protection" under the 14th Amendment.

249) Defendants Dyess, Cernuto, Gerwan, Buchanan, and Ortado, are vicariously liable for the unlawful acts of Defendant Vo.

250) Defendants Dyess, Cernuto, Gerwan, Buchanan, Ortado, Heitfelt, and Vo's acts and omissions constituted a custom practice, and policy of deliberate indifference to

Plaintiff's constitutional rights secure by the Equal Protection Clause of the 14th

Amendment.  Policy 24 of Stuart Police clearly delineates:

24(IV)(A).It is the Shift Commander's responsibility to make sure all reports
are dictated or **completed prior to the end of the shift**. In the event
a report cannot be located, the Shift Commander will be held responsible.

251) Defendants Dyess, Cernuto, Gerwan, Buchanan, and Ortado, Heitfelt, and Vo's

acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless

disregard of Plaintiff's constitutional rights as Equal Protection Clause of the 14th

Amendment.

## 7TH CAUSE OF ACTION
**VIOLATION OF 5TH AND 14TH AMENDMENT RIGHT'S TO DUE PROCESS
as it pertains to the Plaintiff's right to self-incrimination, and deprivation of Life,
Liberty and pursuit of happiness.**

Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as

though fully set forth herein.  (Paragraphs 18-118)

**As it pertains to the City of Stuart and Stuart Police:**
252) Defendants, Vo, Cernuto, Heitfelt, Gerwan were aware of their conduct "under the

color of law" and intent to arrest, but failed to apprise the Plaintiff of her rights to

counsel, as Miranda Rights.  Defendant's actions are noted on BWC's which were not

operated in accordance with Stuart PD Policy 53.

253)The Defendants, as Stuart police officers, failed to present a warrant before arrests

and conducting any form of search of the Plaintiff's body or premises.   In all cases of

arrest, the Officers had adequate notice and could have acquired the appropriate warrant

to serve upon arrest.  The acts and Omissions constituted a custom, practice, and policy

of Deliberate Indifference to Plaintff's constitutional rights secured by the Equal

Protection clause

of the 14th Amendment. and 5th Amendment as Miranda Rights, self-incrimination.

254) Defendants, Dyess, and Buchanan, are vicariously liable for the unlawful acts of Vo, as the INOC investigation revealed gross inconsistencies in the testimonies of Gallas and Vo and when considered violated FS 787.021,  Perjury by contradictory statements.

255) Defendants Dyess and Buchanan maintain a pervasive attitude of Deliberate Indifference to Alexander's claims that Gallas committed felonies in relation to the events of February 27, 2015.  Dyess', as the Chief of Police, demonstrated a custom, practice and Policy.  While law enforcement officers retain discretion to charge these violations, the seriousness of Plaintiff's claims, when considered with the totality of the circumstances, would demonstrate more of an attitude of Depraved Indifference for the Plaintiff's rights, while giving Gallas every "benefit of the doubt" when it was self-evident that Gallas has at minimal committed Battery and Tampering with Evidence Dyess' condoned behavior, as it's "okay" to exclude evidence  in direct contradiction to Policy which leads to a deprivation of the Plaintiff's Civil Rights, as multiple arrests contributed to the deprivation of Life, Liberty, and the Pursuit of Happiness.

## 8TH CAUSE OF ACTION
## CONSPIRACY
### and Violation of Due Process

FS The crime of conspiracy is codified under Section 777.04(3), Florida Statute.

**As it pertains to Officer Vo and Dennis Gallas:**

Plaintiff realleges  and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.  **(Paragraphs 10-42)**

The two elements of conspiracy include:

\ 1) The intent of the defendant was that of the offense (Tamper with Evidence, FS 817.13) 2) In order to carry the intent, the defendant agreed, combined, or confederated with another person to cause the offense to be committed by either of them, or by one of them, or by some other person.

256) Gallas altered, edited, and then deleted the initial video that was used to charge

Alexander with Battery of an Elder. In his sworn Police statement,  Gallas stated, "I have

7 minutes of video", but only submitted 55 secs. into evidence per the instructions of Vo.

These actions were in violation of Policy 27(2017 and 2020), Evidence and Policy 28

Domestic, and FS. 741.28 and FS 817.13.

Policy 27 has since been expanded (2020), III(A)(4) **"Officers are not authorized to open, edit,
alter, or delete any original images** captured regardless of image quality. Poor quality images will also be
submitted to maintain the integrity of the image series."

257) Plaintiff realleges grounds for Tampering with Evidence, and Conspiracy, and Vo

demonstrated Reckless Disregard for the Plaintiff's Civil Rights to Due Process as the

preliminary investigation was "fundamentally flawed.". Stuart Police, Officer Sudhof

reported as Case No. 16-02103, Tampering, as "Obstruction of Justice."

**As it pertains to Roz Johnson, David Dyess, and Michael Mortell:**

258) Plaintiff realleges that the actions of Roz Johnson, David Dyess, and Michael

Mortell were that of Conspiring to cover up, the actions of officers which were illegal

(lying to supervisors about "7 minute video" in Police affidavits), while condoning,

promoting, or encouraging the violation of Alexander's rights to Due process.

Dyess was promoted to Interim City Manager proximal to these events, May 2018.

259) Plaintiff realleges that the Defendants behavior was so egregious as to constitute

Depraved Indifference to her rights to Due process.   In acquiescing during the

Citizen's Complaint process, Johnson, Dyess and Mortell, gave rise to the potential

furtherance of a crimes (Tampering with Evidence, False Imprisonment, Battery, Lying

to Law enforcement, Perjury by Gallas) and violations of  the Plaintiffs rights as "Equal

Protection under the Law", 14th Amendment.

260) Defendants' acts in denying Plaintiff the SIRB hearing, that would have made

public, Vo's and Gallas' actions of Tampering with Evidence, violate Constitutional

Rights of the Plaintiff. Defendants could not reasonably have thought that the conduct of

their agents in the investigative process was "okay" to edit video taken at a crime scene.

### DAMAGES/RELIEF

WHEREFORE, the Plaintiff, JANINE A. ALEXANDER, prays as follows:

1) For a declaratory judgment that Defendants' policies, practices and conduct as alleged

herein, violate Plaintiff's rights under the United States Constitution and laws of Florida.

2) Judgment to be apportioned against the Defendants: City of Stuart, Stuart Police

Department, and the following officers jointly as employees of the City of Stuart and

individually as: Officer Vo (former Stuart police officer), Officer(s) Heitfeld, Cernuto,

Ortado, Gerwan, Buchanan, and former Chief of Police Dyess, and City Attorney

Michael Mortell, H.R. Director, Johnson, as Defendants ASA Bruce Colton, and ASA

Bingham, Denton, and Roodhof. and Deputies Christie, Randolph, Westbrooke, Lymon,

Ewell, and Sheriff Snyder, FL Department of Corrections, Supervisor Cracchiola,

Officers Hill and Ceja , DEFENDANT Dennis A. Gallas, individually (for obstruction of

justice) for Actual and Compensatory DAMAGES OF **$1,500,000.00.**

3) Punitive damages, other relief this Court deems just and proper.

4) For costs of suit and attorney fees as provided by law.

5) For such other relief as the Court deems just and proper.

Respectfully submitted,

*Janine A. Alexander, pro se*

Janine A. Alexander, Pro se
janinealex50@gmail.com
561-305-1474

68

**CERTIFICATE OF SERVICE**

BY email service:

City of Stuart: Anthony Richard Gonzales  Agonzales@carmanbeauchamp.com,
Martin County Sheriff as William Snyder,  Gregory James Jolly
greg@purdylaw.com, cecilia@purdylaw.com
Assistant State Attorney: Lee E Muschott pete@muschottlaw.com
Dennis Gallas: Andrew Ryan Sholtes at andrew@saintlucielawyer.com and
dennisgallas@yahoo.com
Dept. of Corrections, Joseph Cracchiola

# INSTRUCTIONS FOR FILING A
# COMPLAINT UNDER THE CIVIL RIGHTS ACT
# 42 U.S.C., SECTION 1983

This packet includes two forms:
(1)     Complaint Under The Civil Rights Act, 42 U.S.C.§ 1983
(2)     Application to Proceed Without Prepayment of Fees or Costs

To start an action under the you must file:
*       an original, signed complaint,
*       one copy of the complaint for *each* defendant named in the complaint. For example, if you name two defendants, you file the original complaint plus two copies. You should also keep a copy for your records. All copies of the complaint must be identical to the original, signed complaint.
*       filing fee of $400.00 or an Application to Proceed Without Prepayment of Fees/Costs

Return the above forms and/or filing fee to the following address:

Clerk's Office
United States District Court
Southern District of Florida
400 North Miami Avenue, 8N09
Miami, FL 33128-7716

Your complaint must be legibly typewritten or clearly handwritten using a pen (do not use a pencil to complete these forms). As the plaintiff, you must sign and swear to the accuracy of the information in the complaint. If you need more space than is provided on the form, attach an additional blank page to the complaint.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the Southern District of Florida. Also, you must file a separate complaint for each claim you have unless the claims are related to the same incident or issue.

In your complaint, you must provide the facts; you should not include legal arguments or citations.

Ft. Pierce. FL



**PRIORITY MAIL**

*Retail*

**US POSTAGE PAID**

**$7.95**

Origin: 32601
04/02/21
1132280502-51

**PRIORITY MAIL 2-DAY®**

2 Lb 1.50 Oz

**1006**

DELIVERY DAY: 04/05/21

C007

HIGHWAY 1
FL 34950-4209

**USPS TRACKING® #**

05 5812 1092 5403 93

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

**FROM:**

Janine Alexander
1028 NE 11th Ave
Gainesville, FL 32601

**TO:**

Alto Lee Adams, Sr.
U.S. Courthouse
101 South U.S. Hwy 1
Room 2016
Ft. Pierce, FL 34950