UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-14156-Civ-CANNON/MCCABE

JANINE A. ALEXANDER,

      Plaintiff,

vs.

CITY OF STUART, et al.,

      Defendants.

_____/

## REPORT & RECOMMENDATION

**THIS CAUSE** came before the undersigned by Order of Reference from United States District Judge Aileen M. Cannon for disposition of the Defendants' Combined Motion to Dismiss the Plaintiff's First Amended Complaint ("Motion").  (DE 74).  After careful consideration of the record, the parties' briefs, and the applicable law, the undersigned recommends that the Motion be **GRANTED**, partly with prejudice and partly without prejudice, as set forth below.

## I.  Background

This is the latest in a series of lawsuits stemming from a domestic incident that took place on February 27, 2015, between Plaintiff and her former domestic partner Dennis Gallas.  Plaintiff alleges that a variety of persons, public officials, and entities violated her constitutional rights following this incident.  The Court takes the following facts from Plaintiff's First Amended Complaint (DE 61), the allegations of which the Court assumes to be true, as well as from state court records.[1]

_____

[1] Because Plaintiff is proceeding pro se, the Court has construed her pleadings liberally.  However, many of Plaintiff's allegations are difficult to follow without the aid of state court records, which provide an accurate timeline of the events in this case.  Accordingly, the Court has taken judicial

### A.    The Domestic Incident & Criminal Charges

On February 27, 2015, Plaintiff visited the home of her former domestic partner, Dennis Gallas and became involved in a physical altercation.  Plaintiff alleges that Gallas "grabbed her arms" as she attempted to leave the home.  (DE 61 ¶ 42).  At some point, an elderly neighbor "appeared at the front door, reached in and grabbed [Plaintiff's] other arm, and began pulling her with Gallas."  (DE 61 ¶ 42).  Stuart Police Officers responded to the scene.  (DE 61 ¶ 44).  During the fray, Gallas allegedly made a seven-minute recording on his cell phone.  (DE 61 ¶ 46).

Following the incident, Stuart Police Officers arrested or attempted to arrest Plaintiff three times.  First, on March 11, 2015, Stuart Police Officers attempted to arrest Plaintiff at her home on charges of battery on an elderly person, with Gallas's elderly neighbor as the victim.  (DE 61 ¶¶ 60, 71).  The officers could not complete the arrest, however, and an ambulance had to be called to take Plaintiff to the hospital.  (DE 61 ¶¶ 60, 71).  Two days later, on March 13, 2015, officers went to the hospital completed the arrest, again for charges of battery on an elderly person.  (DE 61 ¶¶ 65, 72).

Stuart Police Officers arrested Plaintiff a third time on April 13, 2015.  (DE 61 ¶ 62).  According to the First Amended Complaint, Plaintiff called the police because Gallas had allegedly been stalking her.  (DE 61 ¶ 62).  Stuart Police Officers responded to the scene but refused to make a report of the incident.  (DE 61 ¶ 62).  Plaintiff then called 911 "for [a] back-up unit," after which, Stuart Police Officers arrested Plaintiff for misusing the emergency 911 system.  (DE 61 ¶¶ 62, 80-81).

---

notice of numerous state court records referred to throughout this Report and Recommendation.  *See Paez v. Sec. Fla. Dep't of Corrs.*, 947 F.3d 649, 651-53 (11th Cir. 2020) (finding no error for court to take judicial notice of state court records on a pro se § 2254 petition, where parties received notice and opportunity to be heard via objections to Magistrate Judge's Report and Recommendation); *see also* Fed. R. Evid. 201.  To the extent the parties wish to object to judicial notice, they may do so as set forth in Section V of this Report and Recommendation.

Following the domestic incident, the State Attorney for the Nineteenth Judicial Circuit also filed a variety of criminal cases against Plaintiff: [2]

| battery on an elderly person | *State v. Alexander*, Case No. 15000325CFAXMX State Filed Information, filed April 2, 2015 |
|---|---|
| falsely impersonating an officer | *State v. Alexander*, Case No. 15000319CFAXMX, State's Information Filed, filed April 2, 2015 |
| uttering a forged check resisting an officer without violence | *State v. Alexander*, Case No. 15000409CFAXMX, State's Information Filed, filed April 13, 2015 |
| misuse of 911 system resisting an officer without violence | *State v. Alexander*, Case No. 15001243MMAXMX, State's Information, filed April 21, 2015 |

As to the charges for battery on an elderly person, Plaintiff alleges that the State Attorney's office relied upon false and altered evidence to pursue this charge, namely, Gallas's seven-minute cell phone video, which was surreptitiously edited to only 55 seconds.  (DE 61 ¶¶ 128-29).

In 2015, Plaintiff spent time in the Martin County Jail, although the First Amended Complaint remains unclear as to the exact dates of confinement.  On April 14, 2015, however, Plaintiff alleges that Martin County jail employees ("Jail Employees") placed her in solitary confinement without provocation or probable cause.  (DE 61 ¶¶ 141, 186).  The First Amended Complaint does not specify the length of time in solitary confinement.

On May 22, 2015, Plaintiff entered a written plea of nolo contendere to battery of an elderly person, falsely impersonating an officer, resisting an officer without violence, and uttering a forged check.  *See State v. Alexander*, Case No. 15000319CFAXMX, Circuit Court Plea Packet, filed

---

[2] The docket sheets and many of the underlying docket entries for these cases are publicly available on the website of the Clerk of Courts for the Nineteenth Judicial Circuit of Florida, at https://court.martinclerk.com/home.aspx/search.  The Court hereby takes judicial notice of the online docket sheets for all cases referred to in this Order by case number, as well as all underlying docket entries referred to in this Order by title and filing date.  *See* DE 90.

May 22, 2015; *State v. Alexander*, Case No. 15000409CFAXMX, Circuit Court Plea Packet, filed May 22, 2015.  The state court later sentenced Plaintiff to three years' probation with special conditions, namely, no contact with victim Gallas or his elderly neighbor.  *See State v. Alexander*, Case No. 15000409CFAXMX, Judgment and Sentence, filed May 27, 2015, at 3; *State v. Alexander*, Case No. 15000319CFAXMX, Judgment and Sentence, filed May 27, 2015, at 3.  For misuse of 911 system, Plaintiff also pled nolo contendere, and the state court sentenced her to time served.  *See State v. Alexander*, Case No. 150001243MMAXMX, Judgment and Sentence, filed May 26, 2015, at 2.

### B.    The Probation Violations and Previous Civil Litigation

Following her 2015 plea, Plaintiff began a period of probation.  Over the following years, Probation Officers and Assistant State Attorneys ("ASAs") accused Plaintiff of violating probation on numerous occasions, resulting in additional jail time in the Martin County Jail.  During these same years, Plaintiff began to file a series of pro se civil and administrative cases against many of the Defendants in the instant case.  The First Amended Complaint alleges a variety of constitutional violations stemming from these probation violations, additional periods of jail time, and Plaintiff's efforts to pursue past civil and administrative proceedings.

To begin, on June 11, 2015, Probation Officers and ASAs accused Plaintiff of violating conditions of probation that restricted her from contacting Gallas, when in fact she had only made an accidental "butt-dial" phone call to Gallas.  (DE 61 ¶ 151).  According to state court records, in August 2015, Plaintiff admitted to a violation of probation and received 112 days' time served in the Martin County Jail.  *See State v. Alexander*, Case No. 15000409CFAXMX, Circuit Court Plea Packet, filed August 11, 2015, Judgment and Sentence, filed August 17, 2015, at 4.

In April 2016, Probation Officers and ASAs accused Plaintiff of violating conditions of probation by contacting Gallas and damaging his car, when in fact she had not done these things. (DE 61 ¶¶ 135, 152).  According to court records, in May 2016, Plaintiff admitted to a violation of probation, and the state court reinstated her probation with additional conditions.  *See State v. Alexander*, Case No. 15000409CFAXMX, Circuit Court Plea Packet, filed May 3, 2016, Judgment and Sentence, filed May 9, 2016.

In November 2016, Probation Officers and ASAs again accused Plaintiff of violating probation, again by contacting Gallas, when in reality the evidence showed she never made any such contact.  (DE 61 ¶ 154).  According to state court records, in August 2017, Plaintiff admitted to a violation of probation, and the state court extended her probation by one year and ordered her to pay $2,000 in restitution to Gallas.  *See State v. Alexander*, Case No. 15000409CFAXMX, Circuit Court Plea Packet, filed August 25, 2017, Judgment and Sentence, filed August 31, 2017, at 3.

On February 2, 2018, Plaintiff filed a citizen's complaint with the City of Stuart and the Stuart Police Department regarding the conduct of officers who arrested her on March 11, March 13, and April 13, 2015.  (DE 61 ¶¶ 87, 97).  In sum, the citizen's complaint alleged the officers failed to fully investigate the original domestic incident and failed to file criminal charges against Gallas.  (DE 61 ¶¶ 97-98).  At some point in time, Plaintiff requested permission to attend a hearing on the citizen's complaint by video conference, but the Stuart City Attorney denied her request, giving her the opportunity to send a written letter instead.  (DE 61 ¶¶ 101, 174).  The First Amended Complaint remains unclear as to the exact outcome of the citizen's complaint, except that Plaintiff was not satisfied with the result.

Next, on February 3, 2018, Plaintiff filed a pro se civil lawsuit in state court alleging defamation against Gallas, his wife, and his elderly neighbor.  *See Alexander v. Gallas, et al.*, Case No. 18000160CAAXMX, Complaint, filed February 13, 2018.  Plaintiff filed another pro se suit against Gallas in state court in August 2018.  *See Alexander v. Gallas*, Case No. 18000761CAAXMX.  Plaintiff later settled both lawsuits and signed a settlement agreement that included a general release in favor of Gallas.  *See Alexander v. Gallas et al.*, Case No. 18000160CAAXMX, Defendant Dennis Gallas and Lisa Gallas Motion to Enforce Settlement Agreement, Ex. A, filed February 26, 2019.

On July 24, 2018, Plaintiff filed another pro se civil lawsuit in state court, this time against the City of Stuart, the Stuart Police Department, numerous Stuart Police Officers, ASAs, and others.  *See Alexander v. City of Stuart, et al.*, Case No. 18000721CAAXMX, Complaint, filed July 24, 2018.  The suit alleged multiple causes of action, including negligence.  The state court later dismissed this case with prejudice.  *See Alexander v. City of Stuart, et al.*, Case No. 18000721CAAXMX, Order on Defendants Amended Motion to Dismiss & to Quash Service/Granted with Prejudice For Reasons Stated On Record, filed February 13, 2019, Order of Dismissal with Prejudice as to Assistant State Attorneys, Nita Denton and Kaitlyn Bingham, filed February 18, 2019.

Almost a year later, on March 6, 2019, Plaintiff filed an action in this Court, *Alexander v. City of Stuart, et al.*, Case No. 19-cv-14084-RLR (hereafter the "First Federal Lawsuit").[3]  The First Federal Lawsuit named many of the same defendants as the instant case, including the City

---

[3] The docket sheet and many of the underlying docket entries for this case are publicly available on https://pacer.uscourts.gov/find-case/search-specific-court.  The Court hereby takes judicial notice of the docket sheets and all entries.

of Stuart, the Stuart Police Department, numerous Stuart Police Officers, ASAs and others.  *See*
First Federal Lawsuit, DE 1.

On July 25, 2019, Plaintiff accompanied a process server to the Stuart City Hall to serve
the First Federal Lawsuit.  (DE 61 ¶¶ 116, 199).  Stuart Police responded to the scene and
"barricaded" Plaintiff within the building.  (DE 61 ¶¶ 104-05, 199).  This subjected Plaintiff to a
"potential risk of another medical emergency" because she was inclined to panic attacks.  (DE 61
¶ 199).

Meanwhile, in May 2019, Probation Officers and ASAs once again accused Plaintiff of
violating her probation, this time by failing to pay $2,000 of court-ordered restitution to Gallas.
(DE 61 ¶¶ 135, 183, 232).  In reality, Gallas had already waived his right to receive restitution by
way of the previous settlement agreement, such that no money was due.  (DE 61 ¶¶ 136, 183, 232).
According to state court records, in November 2019, the state court revoked Plaintiff's probation
and sentenced her to 365 days in the Martin County Jail.  *See State v. Alexander*, Case No.
15000409CFAXMX, Judgment and Sentence, filed November 13, 2019, Order of Revocation of
Probation, filed November 19, 2019.

During her period of jail time in 2019, Jail Employees impeded Plaintiff's access to the
courts, the law library, her phone, and other privileges.  (DE 61 ¶¶ 146, 201).  Jail Employees also
subjected her to threats of solitary confinement, "episodes of ranting, demeaning, and abusive
language."  (DE 61 ¶¶ 141, 144, 208).  Plaintiff alleges that Jail Employees did all of this in
retaliation for lawsuits she had filed, described above.  (DE 61 ¶¶ 208, 188).

From September 11, 2019 through October 22, 2019, United States District Judge
Rosenberg entered a series of Orders in the First Federal Lawsuit, granting motions to dismiss filed
by various Defendants because Plaintiff failed to comply with Local Rule 7.1.  *See* First Federal

Lawsuit, DE 24, 25, 26, 27.  Specifically, all of the Defendants who had been served filed motions to dismiss the First Federal Lawsuit, but Plaintiff failed to file any responses to those motions or to effect service on the remaining defendants.  *See* First Federal Lawsuit, DE 24, 25, 26, 27.  On March 24, 2021, more than a year after District Judge Rosenberg entered her dismissal orders, Plaintiff filed a motion to reopen the First Federal Lawsuit.  *See* First Federal Lawsuit, DE 30.  District Judge Rosenberg denied the motion on March 25, 2021, explaining that "the Court's prior orders of dismissal did not expressly preclude the Plaintiff from initiating a new case, should the Plaintiff elect to do so."  *See* First Federal Lawsuit, DE 32.

### C.    The Instant Lawsuit

On April 5, 2021, Plaintiff filed this case, as a new lawsuit, alleging eight counts against the following Defendants: the City of Stuart; the Stuart Police Department; Stuart Police Officers Nyugen Vo, Chris Heitfeld, Mathew Cernuto, Derek Ortado, Michael Gerwan, Charles Buchanan (collectively "Stuart Police Officers"); Stuart Chief of Police David Dyess ("Chief Dyess"); Michael Mortell ("Stuart City Attorney"); Roz Johnson ("Stuart HR Employee"); Dennis Gallas; Martin County Sheriff William D. Snyder ("Sheriff Snyder"); Katrina Christie (Paris), Stephanie Westbrook (Gaskins), Kaylie Lymon, Dee Randolph, Ewell (Perfetti) (collectively "Jail Employees"); Kaitlyn Bingham, Nita Denton, Theodore Roodhof, and Bruce Colton (collectively "ASAs"); the Florida Department of Corrections ("FDOC"); and Robin Hill, Joseph Cracchiola, and Frank Ceja (collectively "Probation Officers").  (DE 1).

On July 13, 2021, the Defendants filed a joint motion to dismiss, which United States Magistrate Judge Maynard recommended be granted without prejudice to allow Plaintiff an opportunity to cure pleading defects.  (DE 56).  District Judge Cannon adopted the recommendation and granted Plaintiff leave to amend.  (DE 59).

Thereafter, on October 12, 2021, Plaintiff filed this First Amended Complaint.  (DE 61).

The First Amended Complaint names the same Defendants as the original Complaint and alleges

eight counts styled as follows:

| Count | Title | Defendants |
| --- | --- | --- |
| Count I | First Amendment Violation Freedom of Speech and Religious Practice and Retaliation for Expression Thereof Under 42 U.S.C. § 1983 | City of Stuart<br>Stuart Police Department<br>Stuart Police Officers<br>Stuart City Attorney<br>ASAs<br>Jail Employees |
| Count II | § 1983 Claim of 4th Amendment Illegal Search and Seizure of Alexander's Person | City of Stuart<br>Stuart Police Department<br>Stuart Police Officers<br>Sheriff Snyder<br>Jail Employees<br>FDOC<br>Probation Officers |
| Count III | Violation of Civil Rights 42 U.S.C. § 1983, Fourteenth Amendment "State Created Danger" | City of Stuart<br>Stuart Police Department<br>Stuart Police Officers<br>Stuart City Attorney<br>Stuart HR Employee |
| Count IV | 6th Amendment, Plaintiff's Right to Defense, and the Impediment of Her Defense | Jail Employees<br>Sheriff Snyder |
| Count V | 8th Amendment Violation, As It Subscribes to Criminal Punishment, and Punishment Grossly Disproportionate to the Severity of Crime | City of Stuart<br>Stuart Police Officers<br>Chief Dyess<br>Sheriff Snyder<br>Jail Employees |
| Count VI | 42 U.S.C. § 1983, *Monell* Claim for Deliberate Indifference and Disregard to Plaintiff's Clearly Established Rights Under the 14th Amendment | City of Stuart<br>Stuart Police Department<br>Stuart Police Officers<br>Chief Dyess<br>Stuart City Attorney<br>Stuart HR Employee<br>Jail Employees<br>Sheriff Snyder |

| Count VII | Federal Conspiracy Claims brought under FS 777.04(3)[4] | Stuart Police Officer Vo Gallas<br>Chief Dyess<br>Stuart City Attorney<br>Stuart HR Employee<br>FDOC<br>Probation Officer Cracchiola |
| Count VIII (improperly labeled IX) | 14th Amendment Right to Due Process Clause, as Fair Trial, Deprivation of Life, Liberty, and Happiness and Under Equal Protection Under the Law | City of Stuart<br>Stuart Police Department<br>Stuart Police Officers<br>Chief Dyess<br>ASAs |

On October 27, 2021, the Defendants filed a combined motion to dismiss.  (DE 74). Defendants raise a variety of arguments and urge dismissal of the First Amended Complaint in its entirety with prejudice.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556

---

[4] Count VII is titled "FEDERAL CONSPIRACY CLAIMS brought under FS 777.04(3)." Although the count itself cites a Florida criminal statute, the Court will construe this as an effort to allege a claim under 42 U.S.C. § 1983.

U.S. at 678.  As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Gill, as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).  Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff.  *See Iqbal*, 556 U.S. at 678; *Darrisaw v. Pa. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1304 (11th Cir. 2020).

The purpose of the federal pleading rules is to ensure a plaintiff presents her claims "discretely and succinctly" so that her adversary can discern what she is claiming and frame a responsive pleading.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)).  And while pleadings from pro se litigants are held to a less stringent standard than pleadings drafted by attorneys, they still must meet minimal pleading standards.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Nassar v. Nassar*, No. 18-14455-CIV- Rosenberg/Maynard, 2020 WL 9460330, at *2 (S.D. Fla. July 16, 2020).

## III.   Discussion

The undersigned recommends that the First Amended Complaint be dismissed, partly with prejudice and partly without prejudice.  The Court begins by addressing arguments that lead to dismissal with prejudice, then turns to those leading to dismissal without prejudice.

### A.      Eleventh Amendment Immunity

The First Amended Complaint names numerous defendants who are immune from suit.  In particular, the Eleventh Amendment immunizes the State of Florida from Section 1983 actions unless the State has waived its sovereign immunity.  *See Williams v. Bd. of Regents of Univ. Sys.*

*of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.").  The State of Florida has not waived its sovereign immunity.  *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). Eleventh Amendment immunity extends to State officials sued in their official capacity, with the exception that litigants can sue state officers for prospective injunctive relief.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (quotation marks omitted).

In this case, Plaintiff has sued FDOC, an agency of the State of Florida.  Plaintiff has also sued three state Probation Officers and four ASAs.  The undersigned recommends dismissal with prejudice of all claims against FDOC and all official-capacity claims against the Probation Officers and the ASAs.

### B.    Assistant State Attorneys

The First Amended Complaint also names four ASAs in their individual capacities.  As state prosecutors, these Defendants enjoy "absolute immunity for certain functions intimately associated with the judicial process."  *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). Prosecutorial immunity extends to any actions a prosecutor takes in his or her role as "an advocate for the state."  *Id.* at 1295.  This includes actions related to "initiating a prosecution and in presenting the State's case[,] ... conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing."  *Rehberg v. Paulk*, 611 F.3d 828, 837-38 (11th Cir. 2010) (citations omitted); *see also Imbler v. Pachtman*, 424 U.S. 409, 437 (1976) ("The general rule was, and is,

that a prosecutor is absolutely immune from suit for malicious prosecution.").  Prosecutorial immunity is so potent that "even if [prosecutors] knowingly proffered perjured testimony and fabricated exhibits at trial, [they] are entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002).

In this case, all of Plaintiff's allegations against the ASAs concern their conduct in "initiating and maintaining" criminal prosecutions.  As such, these Defendants enjoy absolute immunity from suit.  The undersigned notes that Plaintiff previously sued two of the ASAs in state court, and the state court dismissed these ASAs based on prosecutorial immunity.  *See Alexander v. City of Stuart, et al.*, Case No. 18000721CAAXMX, Order of Dismissal with Prejudice as to Assistant State Attorneys, Nita Denton and Kaitlyn Bingham, filed February 18, 2019.  Given that Plaintiff has had multiple past opportunities to plead claims that might overcome prosecutorial immunity, the undersigned recommends dismissal with prejudice of all claims against the ASAs in this case.

### C.        Injunctive Relief Claims

Plaintiff's First Amended Complaint seeks "injunctive relief as a reversal of the charges of Battery of an [Elderly Person], and Expungement of the Plaintiff's criminal record."  (DE 61 Wherefore Clause).  Claims for injunctive and declaratory relief are prospective in nature and are intended to prevent future injuries.  *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 131 (2011).  "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury."  *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).  Likewise, an injury in the past standing alone will not support standing for injunctive relief as a plaintiff must show "a reasonable expectation that the injury they have

suffered will continue to be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999).

In the instant case, Plaintiff has not alleged sufficient facts to show she will be subject to injury in the future because of the alleged wrongful actions of the Defendants. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107-108 (1983) (noting that the plaintiff lacked standing to seek an injunction based on his speculation that he would be arrested again and that he would be placed in a chokehold again). As such, the undersigned recommends that all claims for injunctive relief be dismissed with prejudice. For clarity, these include the following counts and paragraphs: **Count I**, paragraphs 173, 182-84; **Count II**, paragraphs 190, 194-96; **Count III**, paragraphs 197-98; **Count V**, paragraph 204; **Count VI**, paragraph 210; **Count VII**, paragraphs 216-20, 224-26; **Count VIII** (improperly labeled IX), paragraphs 227-28, 230-33.

### D.      Statute of Limitations

Many of Plaintiff's claims are time-barred. Because Section 1983 claims "are best characterized as personal injury actions," they are governed by the state statute of limitations for such claims. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Florida law imposes a four-year statute of limitations for claims of negligence or personal injury. *See* § 95.11(3), Fla. Stat. Plaintiff filed her original complaint on April 5, 2021. (DE 1). As such, the statute of limitations bars all claims that accrued prior to April 5, 2017.

Plaintiff argues the limitations period should be tolled because, in April of 2016, the Social Security Administration adjudicated her disabled due to "depression, GAD, and Complex PTSD." (DE 61 at p. 4; DE 78, ¶¶ 28, 66). The Court cannot agree. Section 95.051, Florida Statutes governs the tolling of limitations periods in Florida, and it sets forth very narrow criteria for doing so. These criteria include:

(d)      The adjudicated *incapacity*, before the cause of action accrued, of the person entitled to sue.  In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

§ 95.051(d), Fla. Stat. (emphasis added).  The Court finds that an administrative finding of "disability" does not equate to an "adjudicated incapacity" for purposes of section 95.051.  *See generally Haskins v. City of Fort Lauderdale*, 898 So. 2d 1120, 1123-24 (Fla. 4th DCA 2005) ("[T]he Florida Supreme Court has also held that the party seeking to escape the statute of limitations must bear the burden of proving circumstances that would toll the statute.") (quotation marks and citation omitted).

The undersigned therefore recommends that all counts be dismissed against all Defendants to the extent they allege claims supported by factual allegations prior to April 5, 2017.  For clarity, these include the following counts and paragraphs:  **Count I**, paragraphs 173, 175, 180-82, 185-87; **Count II**, paragraphs 189-96; **Count III**, paragraphs 197-98, **Count IV**, paragraphs 201-03; **Count V**, paragraphs 204-07; **Count VI**, paragraphs 210, 213-15; **Count VII**, paragraphs 216-21, 223-26; **Count VIII** (improperly labeled IX), paragraphs 227-31.  Because Plaintiff is proceeding pro se, the Court finds she should be permitted one further opportunity to allege facts that might support the tolling of the statute of limitations.  Accordingly, the undersigned recommends this dismissal be without prejudice.

### E.      Gallas

Plaintiff brings one count against her former domestic partner Gallas, **Count VII** (Federal Conspiracy).  Plaintiff alleges, in summary, that Gallas committed a variety of illegal acts that led to Plaintiff's criminal charges in 2015, including manipulation of cell phone video footage.  (DE 61 ¶¶ 40-46, 217-20).  This count should be dismissed for three reasons.

First, as previously explained in section III.D, the statute of limitations bars this claim. Indeed, Plaintiff's relevant allegations regarding Gallas concern events that took place in 2015. (DE 61 ¶¶ 40-46, 217-20).

Second, on February 18, 2019, Plaintiff signed a settlement agreement that included a general release in favor of Gallas. This settlement agreement appears in publicly available Martin County Circuit Court records and provides as follows:

> **Article 4. Consideration**: For and in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and upon the full execution of this Agreement, the parties give as consideration:
>
> **4.1.** Alexander, on behalf of herself, her agents, heirs, administrators, attorneys, successors and assigns, does hereby dismiss, remise, release and hold harmless Dennis Gallas and Lisa Gallas from any and all matters, debts, dues, sums of money, covenants, controversies, agreements, promises, trespasses, damages, losses, expense, costs, liabilities, obligations, claims, demands, grievances, suits, causes of action, complaints, judgments, decrees, executions of whatever kind, in law or in equity, absolute, contingent, likely or unlikely, known or unknown to the date of this Agreement.
>
> **Article 5. Extent of Release**: The releases set forth in this Article 4 is intended to have the broadest possible application and includes, but is not limited to, any tort, contract, common law, constitutional, or other statutory claims arising out of any federal, state, or local laws. The release set forth herein shall apply to the present and future attorneys, affiliates, partners, family members, predecessors, and successors in interest, and assigns of the parties.

*See Alexander v. Gallas*, Case No. 18000160CAAXMX, Defendant Dennis Gallas and Lisa Gallas Motion to Enforce Settlement Agreement, Ex. A, filed February 26, 2019.

Florida public policy "highly favors settlement agreements among parties and will seek to enforce them whenever possible." *Sun Microsystems of Cal., Inc. v. Eng'g & Mfg. Sys.*, 682 So. 2d 219, 220 (Fla. 3d DCA 1996). By its plain terms, the general release in the settlement agreement covers this lawsuit, as Plaintiff's allegations against Gallas relate to conduct that took place before February 18, 2019, the date of the settlement agreement. As such, the release bars this suit.

Third and finally, to state a claim for relief under Section 1983, a plaintiff must show that he or she was deprived of a federal right by a person *acting under color of state law*. *See Gustino v. Stoneybrook W. Master Ass'n, Inc.*, 842 F. App'x 323, 328 (11th Cir. 2021). "For a party to act under color of law, its conduct must be 'fairly attributable to the state':  the deprivation 'must be caused by the exercise of some right or privilege created by' the state, and the party must be a 'state actor.'"  *Id.* (citation omitted).  Gallas is not a state actor, but rather a private citizen.  "Private actors may be deemed to have acted under color of state law, but '[o]nly in rare circumstances.'" *Wellington v. Royal Caribbean Cruises, Ltd.*, 511 F. App'x 974, 976 (11th Cir. 2013) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)).  The Court has closely reviewed the First Amended Complaint and finds that it does not allege any of the "rare circumstances" under which a private actor such as Gallas can be deemed a state actor.

For the reasons stated above, all claims set forth in the First Amended Complaint against Gallas should be dismissed.  This is the fourth pro se lawsuit that Plaintiff has filed against Gallas. *See Alexander v. Gallas, et al.*, Case No. 18000160CAAXMX (first suit); *Alexander v. Gallas*, Case No. 18000761CAAXMX (second suit); First Federal Lawsuit (third suit).  Given that Plaintiff has had multiple opportunities to state claims against Gallas in the past, the undersigned recommends dismissal of these claims with prejudice.

### F.    The Stuart Defendants

Plaintiff alleges a variety of claims against the Stuart Police Officers, the Stuart Police Department, the City of Stuart, Chief Dyess, the Stuart City Attorney, and the Stuart HR Employee. These counts stem from the following allegations:

- In February and March 2015, Stuart Police Officers failed to properly investigate the domestic incident between Plaintiff and Gallas.  Stuart Police Officers also

conspired with Gallas to edit cell phone video evidence, and they failed to obtain and provide the un-edited video to Plaintiff.  (DE 61 ¶¶ 44-46, 48-51, 53, 55, 68, 73, 77-79, 80, 86, 94, 173, 217-20).

- In February and March 2015, Stuart Police Officers failed to arrest Gallas following the domestic incident, even though he had committed crimes against Plaintiff.  (DE 61 ¶¶ 47, 54, 57, 58, 59, 228).

- In March 2015, Stuart Police Officers delivered a trespass warning to Plaintiff while she was in the hospital suffering from panic attacks.  (DE 61 ¶ 52).

- In March 2015, Stuart Police Officers appeared at Plaintiff's home without a warrant and asked her questions; they also searched and seized her property without a warrant.  (DE 61 ¶¶ 66-67, 71).

- In March and April 2015, Stuart Police Officers improperly arrested Plaintiff on charges of battery on an elderly person, impersonating a police officer, and misuse of the emergency 911 system; they did so as a pretext in retaliation for Plaintiff's complaints about their inadequate investigation of the domestic incident.  (DE 61 ¶¶ 61-62, 64, 70, 72, 75-76, 80-82, 173, 190, 197, 204, 227).

- In February 2018, the Stuart Police Department, the City of Stuart, Chief Dyess, the Stuart City Attorney improperly investigated internal complaints that Plaintiff filed against Stuart Police Officers.  These Defendants allegedly conspired together to "cover-up" illegal and unconstitutional acts of the Stuart Police Officers.  (DE 61 ¶¶ 87-88, 97-100, 108-11, 120-23, 211, 221).

- In 2018, the Stuart City Attorney denied Plaintiff the right to attend, by video, a hearing on the internal complaint she filed against Stuart Police Officers and restricted her to writing a letter instead.  (DE 61 ¶¶ 101-03, 112-14, 174).

- On July 25, 2019, the Stuart City Attorney and the Stuart HR Employee called Stuart Police Officers, who then responded to the scene as Plaintiff was attempting to serve the First Federal Action, which subjected Plaintiff to a "potential risk of another medical emergency" because she was inclined to panic attacks.  These Defendants caused a "state created danger" in violation of the Fourteenth Amendment, all in retaliation for Plaintiff's First Amendment protected speech, specifically, filing her past lawsuits.  (DE 61 ¶¶ 104-06, 199-200).

- Chief Dyess, the Stuart Police Department, the City of Stuart, the Stuart City Attorney, and the Stuart HR Employee all failed to train the Stuart Police Officers and other subordinates to ensure they did not violate Plaintiff's constitutional rights, and/or they adopted policies or customs that led to those violations.  (DE 61 ¶¶ 176, 211-12, 221, 223).

Plaintiff's claims should be dismissed for the following reasons.

### 1.    Statute of Limitations

First, as previously explained in section III.D above, the statute of limitations bars many of these claims.  Most of Plaintiff's relevant allegations concern events that took place prior to April 5, 2017.  Claims stemming from these facts should be dismissed.  For clarity, these include the following counts and paragraphs:  **Count I**, paragraphs 173, 175-76; **Count II**, paragraphs 189-90; **Count III**, paragraphs 197-98, **Count V**, paragraphs 204-06; **Count VI**, paragraph 210-12; **Count VII**, paragraphs 216-21, 223; **Count VIII** (improperly labeled IX), paragraphs 227-29.

2.      *Heck* **Bar**

Next, many of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  In

*Heck*, the Supreme Court held that:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by an
> executive order, declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance of a writ of
> habeas corpus[.]

*Id.* at 486–87 (emphasis added).  If "a judgment in favor of the plaintiff would necessarily imply

the invalidity of his [or her] conviction or sentence," the court must dismiss the claim unless the

underlying conviction or sentence has already been invalidated or called into question.  *Id.* at 487;

*see also Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007) ("[F]or *Heck* to apply, it must be the case

that a successful § 1983 suit and the underlying conviction [or imprisonment] be logically

contradictory.").

In this case, Plaintiff alleges a variety of misconduct by Stuart Police Officers and others

that led her to be wrongfully arrested, wrongfully charged with crimes, and wrongfully spend time

in the Martin County Jail.  However, Plaintiff has not alleged facts to show that any of her arrests,

criminal charges, or jail terms were reversed on appeal, expunged, or otherwise declared invalid

or called into question by a tribunal authorized to make such determination.  *See Heck*, 512 U.S.

at 486-87.  As such, Plaintiff fails to state a claim.

3.      **Qualified Immunity**

Next, Plaintiff has not alleged facts to overcome qualified immunity, which shields public

officials acting within the scope of their employment, "provided that the conduct was not 'so

obviously illegal in the light of then-existing law that only an official who was incompetent or who

knowingly was violating the law would have committed' the acts." *Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999) (quoting *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Qualified immunity must be determined by an objective standard. *Crosby* 187 F.3d at 1344. This defense can be defeated only when a plaintiff alleges "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is considered clearly established if, "in light of preexisting law, the unlawfulness of the official's conduct is 'apparent.'" *Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005). "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994).

Moreover, the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* Thus, courts must look to the specific facts at hand and not to generalized constitutional principles. Immunity must remain "the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

In this case, Plaintiff makes multiple allegations against the Stuart Police Officers, the Stuart Police Department, the City of Stuart, Chief Dyess, the Stuart City Attorney, and the Stuart HR Employee.  As set forth below, these allegations fail to state a claim for a constitutional violation, let alone a "clearly established" constitutional violation.  *See Crosby* 187 F.3d at 1345 ("[C]ourts should not assume the violation of a constitutional right but decide this preliminary issue before determining whether the law was clearly established at the time that the public official acted.").

### The Internal Complaint

The First Amended Complaint alleges that Chief Dyess, the Stuart Police Department, the City of Stuart, the Stuart City Attorney, and the Stuart HR Employee all violated her constitutional rights in the handling of Plaintiff's internal citizen's complaint against the Stuart Police Officers. This claim fails because Plaintiff has no cognizable constitutional right to have the Stuart Police Officers disciplined at their place of work.  By analogy, the Supreme Court has recognized that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Sattler v. Johnson*, 857 F.2d 224, 226-27 (4th Cir.1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted); *Fretwell v. Arrant*, No. 5:08cv56/RS/EMT, 2009 WL 2168697, at *2 (N.D. Fla. July 17, 2009) (finding that a § 1983 plaintiff had no cognizable constitutional right to have prison guard prosecuted for making a false statement against him).

Just as Plaintiff would have no constitutional right to see other persons criminally prosecuted, she likewise has no constitutional right to have other persons (including the Stuart Police Officers) disciplined at their respective places of employment.  As such, the First Amended Complaint fails to state a claim on these facts.

**The Request for Video Attendance**

The First Amended Complaint next alleges that the Stuart City Attorney and the Stuart HR Employee violated Plaintiff's constitutional rights by refusing to allow her to attend a hearing, by video, on her internal complaint against the Stuart Police Officers.  This claim also fails.  To begin, the First Amended Complaint remains unclear as to the nature of the internal complaint that Plaintiff filed and the hearing she wanted to attend.  Plaintiff uses the acronyms "INOI" and "SIRB" (DE 61 ¶¶ 87, 101, 103), but the First Amended Complaint does not define these acronyms or identify the rules or regulations that governed these types of complaints or proceedings.  Because the First Amended Complaint lacks sufficient detail to explain the alleged violations, the Court finds it fails to state a claim upon which relief can be granted.  *See Twombly,* 550 U.S. at 555 ("[M]ore than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are required to provide grounds for relief.).

Moreover, the First Amendment does not guarantee an unfettered right to speak at any public meeting, on any issue desired, and in any form desired.  The Eleventh Circuit has recognized, for example, that city commission meetings are "limited public fora," and that municipalities "may restrict access ... by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest."  *See Thomas v. Howze*, 348 Fed. App'x. 474, 478 (11th Cir. 2009).  To the extent Plaintiff attempts to replead this claim in the future, she will need to allege facts that show, among other things, that Defendants lacked a legitimate government interest in restricting the manner in which Plaintiff expressed her views, *i.e.*, by restricting her to a written letter rather than attendance by video conference.

**State-Created Danger**

The First Amended Complaint next alleges a "state created danger" claim against the Stuart Police Officers, the City of Stuart, the Stuart City Attorney, and the Stuart HR Employee.  The Eleventh Circuit once recognized a "state-created danger" or "special danger" doctrine, under which the state had a duty, on substantive due process grounds, to protect individual from the acts of third parties when the state's actions place those individuals in "special danger."  *See Mitchell v. Duval Cnty. Sch. Bd.*, 107 F.3d 837, 839 (11th Cir. 1997) ("In order for a plaintiff to hold the state liable under the "special danger" analysis, he must show that the state affirmatively placed him in a position of danger which was distinguishable from that of the general public.").  In *White v. Lemacks*, 183 F.3d 1253, 1257–59 (11th Cir. 1999), however, the Eleventh Circuit concluded that the "special danger" doctrine had been superseded by the standard employed by the Supreme Court in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992).  Under the *Collins* standard, conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as "arbitrary or conscience shocking in a constitutional sense."  *See, e.g.*, *Collins*, 503 U.S. at 126-28; *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

To satisfy this standard, a plaintiff must do more than show mere negligence on the part of state actors.  *See Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003).  Even deliberate indifference may not suffice.  *See Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) (concluding that deliberate indifference was insufficient to constitute a due-process violation in a non-custodial school setting).  Instead, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."  *Lewis*, 523 U.S. at 846.

Plaintiff's allegations here do not satisfy this standard.  She alleges that Stuart Police Officers "barricaded" her at Stuart City Hall, but she does not allege how long the encounter lasted.

(DE 61 ¶¶ 104-05).  Likewise, she alleges the encounter subjected her to a "potential risk of another medical emergency," but she does not allege that any such emergency resulted.  (DE 61 ¶¶ 199-200).  These allegations fall far short of shocking the conscience in a constitutional sense.  *Cf. Waddell*, 329 F.3d at 1306-07 (affirming summary judgment in favor of public officials in a § 1983 action, where family of victim alleged that public officials released inmate from jail to work as a confidential informant, despite inmate's extensive drunk driving convictions, where inmate subsequently killed the victim in a drunk driving accident); *White*, 183 F.3d at 1259 (affirming dismissal of § 1983 action where nurses alleged the actions of jail officials caused them to be attacked and beaten by jail inmate); *Gayle v. Meade*, No. 20-21553-Cooke/Goodman, 2020 WL 1949737, *28 (S.D. Fla. April 22, 2020) (dismissing § 1983 action where inmates alleged jail officials placed them in danger of contracting COVID-19).

## First Amendment Retaliation

The First Amended Complaint next alleges that the incident on July 25, 2019, gives rise to First Amendment retaliation claim because the Stuart Police Officers, the City of Stuart, the Stuart City Attorney, and the Stuart HR Employee "barricaded" her in retaliation for filing the First Federal Lawsuit.  "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show:  (1) she engaged in constitutionally protected speech … ; (2) the defendant's retaliatory conduct adversely affected that protected speech … ; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech …."  *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").

A Section 1983 plaintiff suffers an "adverse action if defendant's allegedly retaliatory conduct would likely deter person of ordinary firmness from exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). As the Eleventh Circuit has recognized, government officials should not be liable when the plaintiff suffers only a "de minimis inconvenience to her exercise of First Amendment rights." *Id.* at 1254; *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ....").

Here, Plaintiff alleges the Defendants "barricaded" her for an unspecified period of time on July 25, 2019, at the Stuart City Hall. (DE 61 ¶¶ 105,199). The Court finds these allegations would not likely "deter person of ordinary firmness from exercise of First Amendment rights." *See Bennett,* 423 F.3d at 1254. Indeed, the events that day did not deter the Plaintiff herself from continuing to litigate the First Federal Lawsuit or from filing another suit (this one) a year later. *See Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (noting that alleged retaliation did not prevent the plaintiff from further exercise of his First Amendment rights, namely, filing additional prison grievances). Also, Plaintiff has not alleged facts that show a plausible causal nexus between her protected free speech and the alleged retaliatory animus of the Defendants who committed the alleged conduct of July 25, 2019. *See DeMartini,* 942 F.3d at 1289 (setting forth the elements of a First Amendment retaliation claim).

### *Monell* Claim

The First Amended Complaint next alleges *Monell* claims against the Stuart Police Department, the City of Stuart, Chief Dyess, the Stuart City Attorney, and the Stuart HR Employee. These claims recognize that a Section 1983 plaintiff cannot rely upon the theory of

respondeat superior.  *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 692, (1978) (finding that

§1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the

basis of the existence of an employer-employee relationship with a tortfeasor").  Instead, local

government entities can only be held liable under Section 1983 when the "execution of the

government's policy or custom ... inflicts the injury."  *City of Canton v. Harris*, 489 U.S. 378,

385 (1989).

    To impose Section 1983 municipal liability, therefore, a plaintiff must allege facts that

show: (1) that his or her constitutional rights were violated; (2) that the municipality had a policy

or custom that constituted deliberate indifference to that constitutional right; and (3) that the

policy or custom caused the violation.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.

2004).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-

spread practice…."  *Depew v. City of St. Mary's Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see

also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a

'consistent and widespread practice' of constitutional deprivations to prove local government

liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881

(11th Cir. 2014) ("[T]he challenged practice or custom must be 'so pervasive as to be the

functional equivalent of a formal policy.'") (quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330

n.6 (11th Cir. 2003)).

    A Section 1983 plaintiff can also show "deliberate indifference" through a municipality's

failure to train its employees, and this failure may constitute a "policy or custom" actionable

under Section 1983.  *See Canton*, 489 U.S. at 379 (rejecting defendant's argument that municipal

liability can be imposed only where the challenged policy itself is unconstitutional and finding

that "there are limited circumstances in which a 'failure to train' allegation can be the basis for

liability [under § 1983].”); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A]n allegation of failure to train or supervise can be the basis for liability under § 1983 ... only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.").

In this case, the First Amended Complaint fails to allege facts that show widespread policies or customs that amounted to a deliberate indifference to constitutional rights. As to the failure-to-train allegation, the First Amended Complaint identifies numerous valid municipal policies that Defendants allegedly failed to follow; however, the First Amended Complaint fails to allege specific facts showing a failure to train employees to follow these policies. Instead, Plaintiff relies on conclusory and boilerplate allegations, with little to no supporting facts. (DE ¶¶ 210-12). Such allegations are not sufficient to state a claim. *See Twombly,* 550 U.S. at 555 ("[M]ore than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are required to provide grounds for relief.).

Indeed, the bulk of Plaintiff's allegations refer strictly to her own interactions with the Defendants, from which she concludes the existence of widespread unconstitutional polices or customs, or widespread failure to train. Courts have repeatedly rejected *Monell* claims where the plaintiff fails to allege facts beyond his or her own interactions with the defendants. *See Campbell v. City of Jacksonville*, No. 3:17-cv-914-J-34JRK, 2018 WL 1463352, at *16 (M.D. Fla. Mar. 23, 2018) (dismissing § 1983 claim where plaintiff described only a single incident and failed to offer any facts supporting the existence of a widespread custom); *Willis v. City of Coral Springs*, No. 16-CV-60959, 2016 WL 3747611, at *5 (S.D. Fla. July 13, 2016) (concluding that failure to train claim was insufficiently pled, where plaintiff alleged no "fact allegations relating to anything other

than the events of [plaintiff's own interactions]"); *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1327-28 (S.D. Fla. 2015) (dismissing failure-to-train claims because "the facts alleged simply do not plausibly give rise to the inference that a final policymaker for the County made a 'decision not to train the officer'"); *Larosa v. City of Sweetwater*, No. 13-21585, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint that "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that arrest" to substantiate allegations of a policy or custom).

For the reasons stated above, the undersigned recommends that all claims against the Stuart Police Officers, the Stuart Police Department, the City of Stuart, Chief Dyess, the Stuart City Attorney, and the Stuart HR Employee be dismissed.  Because Plaintiff is proceeding pro se, the undersigned recommends dismissal be without prejudice, so that Plaintiff can be afforded one further opportunity to cure pleading defects.

### G.  Jail Employees & Sheriff Snyder

Plaintiff next alleges a variety of claims against the Jail Employees and Sheriff Snyder: **Count I** (First Amendment Violation Freedom of Speech and Religious Practice), **Count II** (Fourth Amendment Illegal Search and Seizure), **Count IV** (Sixth Amendment Impediment of Defense), **Count V** (Eighth Amendment Grossly Disproportionate Punishment), **Count VI** (*Monell* claims).  These counts stem from the following allegations:

- In April 2015 Jail Employees improperly put Plaintiff in solitary confinement, which impeded her ability to defend herself on criminal charges.  They also denied her grievance procedures.  (DE 61 ¶¶ 141-42, 186-87, 191-92, 201).

- On three subsequent occasions June 11, 2015, April 8, 2016, and November 2, 2016, Jail Employees put Plaintiff in solitary confinement without probable cause. (DE 61 ¶¶ 143, 148, 207).

- In August 2019, Jail Employees threatened to place Plaintiff in solitary confinement, and denied her other privileges, in retaliation for the First Federal Lawsuit.  (DE 61 ¶¶ 145-46, 188, 208).

- In 2019, Jail Employees denied Plaintiff access to the law library, copies of her court filings, writing utensils, paper, and postage, which impeded her defense of probation charges and her ability to litigate ongoing civil lawsuits.  (DE 61 ¶¶ 146, 188, 192).

- Sheriff Snyder failed to train the Jail Employees to ensure they did not violate Plaintiff's constitutional rights, and/or Sheriff Snyder adopted or applied policies or customs that led to those violations.  (DE 61 ¶¶ 147, 193, 203, 209, 214-15).

These claims should be dismissed for several reasons.

### 1.    Statute of Limitations

First, as previously explained in section III.D above, the statute of limitations bars portions of these claims.  Many of Plaintiff's relevant allegations concern events that took place prior to April 5, 2017.  Claims stemming from these facts should be dismissed.  For clarity, these are: **Count I**, paragraphs 186-87; **Count II**, paragraphs 191-93; **Count IV**, paragraphs 201-03; **Count V**, paragraph 207, 209**; Count VI**, paragraph 213-15.

### 2.    Qualified Immunity

Next, Plaintiff has not alleged facts to overcome qualified immunity.  *See, e.g.*, *al-Kidd*, 563 U.S. at 735.  Plaintiff makes three timely allegations (1) In 2019, Jail Employees threatened

to put her in solitary confinement in retaliation for First Amendment protected free speech; (2) in 2019, Jail Employees impeded her ability to defend herself in ongoing probation violation charges and civil lawsuits, and (3) Sheriff Snyder failed to train Jail Employees after April 5, 2017.  As set forth below, these allegations fail to state a claim for a constitutional violation, let alone a "clearly established" constitutional violation.

### First Amendment Retaliation

As to the claim that Jail Employees retaliated against Plaintiff for protected speech, this claim fails for multiple reasons.  First, the First Amended Complaint does not allege facts that show an adverse action that would "likely deter person of ordinary firmness from exercise of First Amendment rights."  *See Bennett*, 423 F.3d at 1254.  Mere verbal threats to place a plaintiff in solitary confinement, without more, do not rise to the level of an adverse action.  *See Hayes v. Starling*, No. 20-cv-81921-RAR, 2022 WL 1211377, at *4 (S.D. Fla. April 25, 2022) (verbal threat to place inmate in solitary confinement not sufficient to allege First Amendment retaliation claim); *cf. Fretwell,* 2009 WL 2168697 at *2 (verbal threats, without more, not sufficient to state an Eighth Amendment violation).  Moreover, the Court again notes that the alleged verbal threats by Jail Employees did not, in fact, deter Plaintiff from continuing to litigate lawsuits against the Defendants.  *See Hayes*, 2022 WL 1211377 at *4 (noting that inmate continued to file prison grievances even after alleged retaliatory threats to put him in solitary).

### Access to Courts

Next, as to the claim that Jail Employees impeded Plaintiff's ability to litigate her ongoing civil and criminal cases, the law recognizes no per se constitutional right to a law library or legal assistance, but only "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." *Juiffre v. Broward Sheriff's Office*, 717 F. App'x

886, 888 (11th Cir. 2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  To bring an access to the courts claim, an inmate "must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Id.* (quoting *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998)).  The impairment of any other "litigating capacity is simply one of the incidentals (and perfectly constitutional) consequences of conviction and incarceration."  *Id.*  To show actual injury, the inmate must show that shortcomings in the jail's law library or legal assistance program "hindered his [or her] efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351.

In this case, the First Amended Complaint makes boilerplate allegations and conclusory statements but fails to allege specific factual details as to how Jail Employees hindered Plaintiff's ability to represent herself pro se.  (DE ¶¶ 148, 188).  In particular, the First Amended Complaint does not allege the exact legal proceedings at issue, the details of how Jail Employees prevented her from representing herself pro se in these proceedings, or the details of how and why the activities of Jail Employees caused Plaintiff to suffer negative outcomes in her legal proceedings. Also, the First Amended Complaint does not allege facts that show the legal proceedings that Jail Employees allegedly hindered were "nonfrivolous cases." *See Juiffre*, 717 F. App'x at 888. Because the First Amended Complaint lacks sufficient detail to explain the alleged violations, the Court finds it fails to state a claim upon which relief can be granted.  *See Twombly*, 550 U.S. at 555 ("[M]ore than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are required to provide grounds for relief.).

For these reasons, the undersigned recommends that all claims against the Jail Employees be dismissed.  Because Plaintiff is proceeding pro se, the undersigned recommends that dismissal

be without prejudice, so that Plaintiff can be afforded one further opportunity to cure pleading defects.

### *Monell* Claim

For the same reasons set forth in Section III.F.3 above, Plaintiff fails to allege a constitutional *Monell* claim against Sheriff Snyder. To do so, Plaintiff must allege facts that show persistent and wide-spread policies or customs or failures to train. *See* Section III.F.3. Plaintiff has not done so here. Rather, she has simply alleged the facts of her own personal encounters with law enforcement and other public officials, from which she infers the existence of widespread unconstitutional polices or customs, or widespread failure to train. Likewise, the First Amended Complaint identifies numerous valid Model Jail Standards and grievance procedures that Plaintiff believes were violated, but Plaintiff fails to allege specific facts showing a failure to train employees to follow these policies and procedures. Instead, Plaintiff relies on conclusory and boilerplate allegations of failure to train. (DE ¶¶ 191, 193, 213-15).

For these reasons, the undersigned recommends that all claims against Sheriff Snyder be dismissed. Because Plaintiff is proceeding pro se, the undersigned recommends that dismissal be without prejudice, so that Plaintiff can be permitted one further opportunity to cure pleading defects.

### H.    Probation Officers

Plaintiff sued three Probation Officers and alleged the following claims: **Count II** (Fourth Amendment Illegal Search and Seizure), **Count VII** (Federal Conspiracy). These counts stem from the following allegations:

- In June 2015 Probation Officers wrongly accused Plaintiff of violating probation by contacting Gallas, even though the contact was a mistaken "butt dialed" phone

call.  Plaintiff was entitled to alternative sanctions but instead received jail time. (DE 61 ¶¶ 151, 153-54, 170, 194).

- In April 2016, Probation Officers wrongly accused Plaintiff of violating probation by contacting Gallas, even though she had not done so.  Plaintiff spent time in jail as a result.  Plaintiff was entitled to alternative sanctions, but instead received jail time.  (DE 61 ¶¶ 152-54, 170, 194).

- In May 2019, Probation Officers wrongly accused Plaintiff of violating probation by failing to pay court-ordered restitution to Gallas, even though Gallas had waived his right to restitution by way of a separate settlement agreement.  This caused Plaintiff to be arrested, extradited from Tennessee, transported to Florida in a cruel and unusual manner, and sentenced to 365 days in the Monroe County Jail.  She was also denied an evidentiary hearing before her arrest, and such hearing would have negated her guilt.  (DE 61 ¶¶ 160-65, 170-71, 194-95).

- Probation Officer Cracchiola failed to train other Probation Officers to ensure they did not violate Plaintiff's constitutional rights, and/or he adopted or applied policies or customs that led to those violations.  (DE 61 ¶¶ 224-25).

These claims should be dismissed for several reasons.

### 1.     Statute of Limitations

First, as previously explained in section III.D above, the statute of limitations bars portions of these claims.  Many of Plaintiff's relevant allegations concern events that took place prior to April 5, 2017.  Claims stemming from these facts should be dismissed.  For clarity, these are: **Count II**, paragraphs 194-95, and **Count VII**, paragraphs 224-25.

### 2.    *Heck* Bar

Next, many of Plaintiff's claims are barred by *Heck* 512 U.S. at 486-87, which prohibits Section 1983 plaintiffs from obtaining money damages based on an allegedly unconstitutional conviction or imprisonment that was never reversed on direct appeal, expunged, declared invalid, or called into question by any court.  "[F]or *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction [or imprisonment] be logically contradictory."  *Dyer*, 488 F.3d at 884.

Here, Plaintiff alleges that Probation Officers violated her constitutional rights by wrongfully accusing her of probation violations in 2019, causing her to wrongfully spend time in the Martin County Jail.  She also alleges that Probation Officer Cracchiola committed *Monell* violations that caused these improper probation violations and jail time.  However, Plaintiff has not alleged facts to show that any of her probation violations or jail terms were reversed on appeal, expunged, or otherwise declared invalid or called into questions by a tribunal authorized to make such determination.  *See Heck*, 512 U.S. at 486-87.  As such, these claims must be dismissed.

For the reasons stated above, the undersigned recommends that all claims against the Probation Officers be dismissed.  Because Plaintiff is proceeding pro se, the undersigned recommends that this dismissal be without prejudice, so that Plaintiff can be permitted one further opportunity to cure pleading defects.

## IV.    Conclusion

Accordingly, the undersigned recommends that Defendants' Motion (DE 74) be **GRANTED IN PART WITH PREJUDICE AND GRANTED IN PART WITHOUT PREJUDICE** as follows:

(1)     As to the Florida Department of Corrections, all claims shall be **DISMISSED WITH PREJUDICE.**

(2)      As to Assistant State Attorneys Kaitlyn Bingham, Nita Denton, Theodore Roodhof, and Bruce Colton, all claims shall be **DISMISSED WITH PREJUDICE.**

(3)     As to Probation Officers Robin Hill, Joseph Cracchiola, and Frank Ceja, all official capacity claims shall be **DISMISSED WITH PREJUDICE**, and all individual-capacity claims shall be **DISMISSED WITHOUT PREJUDICE.**

(4)     As to claims for injunctive relief, all such claims shall be **DISMISSED WITH PREJUDICE.**

(5)     As to Dennis Gallas, all claims shall be **DISMISSED WITH PREJUDICE.**

(6)     As to the City of Stuart, the Stuart Police Department, Officer Nyugen Vo, Officer Chris Heitfeld, Officer Mathew Cernuto, Officer Derek Ortado, Officer Michael Gerwan, Officer Charles Buchanan, Stuart Chief of Police David Dyess, Stuart City Attorney Michael Mortell, and Stuart HR Person Roz Johnson, all claims shall be **DISMISSED WITHOUT PREJUDICE.**

(7)     As to Martin County Sheriff William D. Snyder, Katrina Christie (Paris), Stephanie Westbrook (Gaskins), Kaylie Lymon, Dee Randolph, and Ewell (Perfetti), all claims shall be **DISMISSED WITHOUT PREJUDICE.**

## V.     Notice of Right to Object

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a *de*

*novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 15th day of July 2022.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE